# Property: 409 Chisholm Street

# File #: 2021-5816

## A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB Approval No 2502-0265

### B. Type of Loan

| | | | | | |
|---|---|---|---|---|---|
| 1. ☐ FHA | 2. ☐ RHS | 3. ☐ Conv. Unins. | 6. File No. 2021-5816-1 | 7. Loan No. | 8. Mortgage Insurance Case No. |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Notes: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: Elliot Ramos, as a Trustee of 409 Chisholm St. Land Trust, a Florida Trust Dated January 1, 2021 | E. Name & Address of Seller: James D. Bulger | F. Name & Address of Lender: HIS Capital Funding 2151 Consulate Drive 6 Orlando, FL 32837 |
|---|---|---|
| G. Property Location: 409 Chisholm Street Montgomery, AL 36110 | H. Settlement Agent: Law Offices of Jeff W. Parmer, LLC Place of Settlement: 2204 Lakeshore Drive Suite 125 Birmingham, AL 35209 | I. Settlement Date: 02/04/2021 Funding Date: 02/04/2021 Disbursement Date: 02/04/2021 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due from Borrower** | | **400. Gross Amount Due to Seller** | |
| 101. Contract sales price | $38,100.00 | 401. Contract sales price | $38,100.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $5,084.99 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustment for items paid by seller in advance | | Adjustment for items paid by seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. Gross Amount Due from Borrower | $43,184.99 | 420. Gross Amount Due to Seller | $38,100.00 |
| **200. Amount Paid by or in Behalf of Borrower** | | **500. Reductions in Amount Due to Seller** | |
| 201. Deposit | | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | $39,549.88 | 502. Settlement charges to seller (line 1400) | $544.70 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of First Mortgage | |
| 205. | | 505. Payoff of Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. Seller Concession | $3,600.00 | 508. Seller Concession | $3,600.00 |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes 10/01/2020 to 02/04/2021 | $35.11 | 511. County Taxes 10/01/2020 to 02/04/2021 | $35.11 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 219. | | 518. | |
| | | 519. | |
| 220. Total Paid by/for Borrower | $43,184.99 | 520. Total Reduction Amount Due Seller | $4,179.81 |
| **300. Cash at Settlement from/to Borrower** | | **600. Cash at Settlement to/from Seller** | |
| 301. Gross amount due from borrower (line 120) | $43,184.99 | 601. Gross amount due to seller (line 420) | $38,100.00 |
| 302. Less amounts paid by/for borrower (line 220) | $43,184.99 | 602. Less reductions in amounts due seller (line 520) | $4,179.81 |
| 303. Cash ☐ From ☒ To Borrower | | 603. Cash ☒ To ☐ From Seller | $33,920.19 |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Case 21-31333   Doc 65-16   Filed 11/22/21   Entered 11/22/21 23:12:24   Desc
Exhibit P   Page 2 of 45

| L. Settlement Charges | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|
| **700. Total Real Estate Broker Fees** | | |
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| **800. Items Payable in Connection with Loan** | | |
| 801. Our origination charge | | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee | | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | $900.26 | |
| 807. Carrying Cost to HIS Capital Funding | $889.87 | |
| 808. 3 Months Payment to HIS Capital Funding | $706.46 | |
| 809. Project Management to HIS Capital Funding | $2,010.00 | |
| 810. Origination Fee to HIS Capital Funding | | |
| **900. Items Required by Lender to be Paid in Advance** | $247.25 | |
| 901. Daily interest charges from 02/04/2021 to 03/01/2021 @ $9.89 /day | | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's insurance | | |
| 904. | | |
| **1000. Reserves Deposited with Lender** | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| **1100. Title Charges** | | |
| 1101. Settlement or closing fee to Law Offices of Jeff W. Parmer, LLC | | |
| 1102. Owner's title insurance | | |
| 1103. Lender's title insurance | | |
| 1104. Lender's title policy limit $39,549.88 | | |
| 1105. Owner's title policy limit $38,100.00 | $62.50 | $62.50 |
| 1106. Title - lender premium to Courtney & Mann, LLP $62.50 | $69.75 | $69.75 |
| 1107. Title - owners premium to Courtney & Mann, LLP $69.75 | $300.00 | $300.00 |
| 1108. Title - Settlement Fee to Law Offices of Jeff W. Parmer, LLC $300.00 | $25.00 | |
| 1109. Title - CPL to Courtney & Mann, LLP $25.00 | | |
| **1200. Government Recording and Transfer Charges** | | |
| 1201. Recording fees: Deed $19.50 Mortgage $44.50 Release $ to Montgomery County Recording Office | $64.00 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamp Deed $0.50 Mortgage $59.40 to Montgomery County Recording Office | $59.90 | |
| 1204. | | |
| **1300. Additional Settlement Charges** | | |
| 1301. | | |
| 1302. | | $112.45 |
| 1303. 2020 Montgomery County Taxes to Montgomery County Revenue Commissioner | $750.00 | |
| 1304. Buyer's Finder Fee to Home Buyer, LLC | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | $5,084.99 | $544.70 |
| **1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | |

See signature addendum

## ADDENDUM TO CLOSING DISCLOSURE

I have carefully reviewed the Closing Disclosure and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Closing Disclosure.

I hereby acknowledge that the following disclosure was made prior to the closing of the subject transaction: I, the undersigned, understand that there is a potential conflict of interest for the attorney handling the transaction made in connection with the subject contract. I have been advised that I have the right to obtain other counsel to represent myself. After being advised of the potential conflict of interest and my right to obtain counsel, I hereby elect to have a representative of the Law Offices of Jeff W. Parmer, LLC, close the transaction. I further understand that at any time during or after this transaction, my right to obtain counsel continues, and I understand that I have the right to terminate the proceedings at this closing if I feel that I need the services of separate counsel.

The undersigned Seller(s) and Purchaser(s) of the property located at **409 Chisholm Street, Montgomery, AL 36110** to pro-rate the taxes is based on a call to the Tax Assessor's office on or before the day of closing. It is considered to be the best information available at the time of closing.

**Substitute Form 1099 Seller Statement:** The information contained on the Closing Disclosure attached hereto is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty and or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price on the Closing Disclosure constitutes the Gross Proceeds of this transaction. **Seller Instructions:** To determine if you have to report the sale or exchange of your primary residence on your tax return, see the Schedule D (Form 1040) instructions. If the real estate was not your primary residence, complete the applicable parts of Form 4979, Form 6252, and/or Schedule D (Form 1040). You are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number provided on the Certification For No Information Reporting On The Sale Or Exchange Of A Principal Residence statement is my correct taxpayer identification number.

**SELLERS:**

**BORROWERS:**

**Elliot Ramos, as a Trustee of 409 Chisholm St. Land Trust, a Florida Trust Dated January 1, 2021**

_____
**James D. Bulger**

By: _____

Its _____

_____

Dated:

Dated:

The Closing Disclosure which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Law Offices of Jeff W. Parmer, LLC

**Jeff W. Parmer**

## ADDENDUM TO CLOSING DISCLOSURE

I have carefully reviewed the Closing Disclosure and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Closing Disclosure.

I hereby acknowledge that the following disclosure was made prior to the closing of the subject transaction: I, the undersigned, understand that there is a potential conflict of interest for the attorney handling the transaction made in connection with the subject contract. I have been advised that I have the right to obtain other counsel to represent myself. After being advised of the potential conflict of interest and my right to obtain counsel, I hereby elect to have a representative of the Law Offices of Jeff W. Parmer, LLC, close the transaction. I further understand that at any time during or after this transaction, my right to obtain counsel continues, and I understand that I have the right to terminate the proceedings at this closing if I feel that I need the services of separate counsel.

The undersigned Seller(s) and Purchaser(s) of the property located at **409 Chisholm Street, Montgomery, AL 36110** to pro-rate the taxes is based on a call to the Tax Assessor's office on or before the day of closing. It is considered to be the best information available at the time of closing.

**Substitute Form 1099 Seller Statement:** The information contained on the Closing Disclosure attached hereto is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty and or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price on the Closing Disclosure constitutes the Gross Proceeds of this transaction. **Seller Instructions:** To determine if you have to report the sale or exchange of your primary residence on your tax return, see the Schedule D (Form 1040) instructions. If the real estate was not your primary residence, complete the applicable parts of Form 4979, Form 6252, and/or Schedule D (Form 1040). You are required by law to provide the settlement agent with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number provided on the Certification For No Information Reporting On The Sale Or Exchange Of A Principal Residence statement is my correct taxpayer identification number.

**SELLERS:**

James D. Bulger

2-3-2021

Dated:

**BORROWERS:**

**Elliot Ramos, as a Trustee of 409 Chisholm St. Land Trust, a Florida Trust Dated January 1, 2021**

By: _____
Its _____

_____

Dated:

The Closing Disclosure which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

Law Offices of Jeff W. Parmer, LLC

Jeff W. Parmer

# CONTRACT ADDENDUM

**THIS CONTRACT ADDENDUM** dated this __7th__ day of ___January___, __2021__

**BETWEEN:**

Pinehurst LLC

**OF THE FIRST PART**

- AND-

HIS Capital Group, LLC

**OF THE SECOND PART**

**Background**

A. Pinehurst LLC and HIS Capital Group, LLC (the "Parties") entered into the contract (the "Contract") dated December 14, 2020, for the purpose of Acquisition of real estate portfolio in Mongtomery Alabama.

B. The Parties desire to amend the Contract on the terms and conditions set forth in this Contract Addendum (the "Agreement").

C. This Agreement is the first amendment to the Contract.

D. References in this Agreement to the Contract are to the Contract as previously amended or varied.

**IN CONSIDERATION OF** the Parties agreeing to amend their obligations in the existing Contract, and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree to keep, perform, and fulfill the promises, conditions and agreements below:

**Amendments**

1. The Contract is amended as follows:

Page 1 of 4

Doc ID: a499f5e39d86f4a4192ccc1399e8c6fef86ee2ae

a. The sales price for each individual property is amended along with the amendment to the closing dates for Phase 1 and Phase 2.

## No Other Change

2. Except as otherwise expressly provided in this Agreement, all of the terms and conditions of the Contract remain unchanged and in full force and effect.

## Miscellaneous Terms

3. Capitalized terms not otherwise defined in this Agreement will have the meanings ascribed to them in the Contract. Headings are inserted for the convenience of the parties only and are not to be considered when interpreting this Agreement. Words in the singular mean and include the plural and vice versa. Words in the masculine include the feminine and vice versa. No regard for gender is intended by the language in this Agreement.

4. New Purchase Price Amount as shown in Exhibit 1. Purchase Price includes the renovation holdback funds that will be heldback by the buyer and released to the seller/project manager to complete all the renovations as shown in the scope of work for each property.

5. Rehab holdback subject to contractor /project management agreement with Pinehurst LLC to complete the renovation as proposed in the scope of work matching the rehab budget show on Exhibit 1.

## Governing Law

6. Subject to the terms of the Contract, it is the intention of the Parties that this Agreement, and all suits and special proceedings under this Agreement, be construed in accordance with and governed, to the exclusion of the law of any other forum, by the laws of the State of Florida, without regard to the jurisdiction in which any action or special proceeding may be instituted.

Page 2 of 4

Doc ID: a499f5e39d86f4a4192ccc1399e8c6fef86ee2ae

IN WITNESS WHEREOF the Parties have duly affixed their signatures under hand and seal on this
_7th_ day of _January_ , _2021_ .


_Sam Sewell_

WITNESS: _Sam Sewell_


_Rick Melero_

WITNESS: _Rick Melero_


Pinehurst LLC

Per: _____ (Seal)

James Bulger on behalf of Pinehurst LLC


HIS Capital Group, LLC

Per: _____ (Seal)

Luis D Roque on behalf of HIS Capital Group.


Page 3 of 4

Doc ID: a499f5e39d86f4a4192ccc1399e8c6fef86ee2ae

Case 21-31333   Doc 65-16   Filed 11/22/21   Entered 11/22/21 23:12:24   Desc
Exhibit P   Page 8 of 45

# EXHIBIT 1

## PURCHASE PRICE + REHAB HOLDBACK

| Phases | # | Address | Original Purchase Price | **New Purchase Price** | **Rehab Holdback** |
|---|---|---|---|---|---|
| **PHASE ONE** | 1 | 612 Planters Ct Montgomery Alabama 36109 | $60,000.00 | $60,000.00 | $0.00 |
| | 2 | 264 pocahontas rd montgomery 36105 | $50,000.00 | $27,000.00 | $5,000.00 |
| | 3 | 3763 whiting montgomery 36105 | $45,000.00 | $28,100.00 | $3,100.00 |
| | 4 | 229 w woodland montgomery 36105 | $50,000.00 | $28,600.00 | $600.00 |
| | 5 | 409 chisholm st montgomery 36105 | $55,000.00 | $34,500.00 | $900.00 |
| | 6 | 212 e park ave montgomery 36105 | $47,500.00 | $30,850.00 | $8,850.00 |
| | 7 | 6153 cherry hill rd montgomery 36105 | $50,000.00 | $36,000.00 | $3,600.00 |
| **PHASE TWO** | 8 | 319 e park ave montgomery 36105 | $47,500.00 | $32,400.00 | $3,000.00 |
| | 9 | 4599 dover rd montgomery 36105 | $50,000.00 | $50,000.00 | $25,000.00 |
| | 10 | 6000 oakleigh rd montgomery 36105 | $50,000.00 | $44,600.00 | $8,600.00 |
| | 11 | 39 davis ave montgomery 36105 | $45,000.00 | $28,200.00 | $3,200.00 |
| | 12 | 116 hobbie dr montgomery 36105 | $55,000.00 | $38,800.00 | $800.00 |
| | 13 | 3256 upchurch cir montgomery 36105 | $50,000.00 | $34,500.00 | $12,000.00 |



## CLOSING DATES

Buyer's closing dates may be sooner than the closing dates shown below if insurance and title requirements meet the buyer's acquisition requirements and guidelines.

PHASE 1 | Closing Date | 01/21/2021
PHASE 2 | Closing Date | 02/03/2021

Page 4 of 4

Doc ID: a499f5e39d86f4a4192ccc1399e8c6fef86ee2ae

| | |
|---|---|
| **TITLE** | Addendum to Contract for Montgomery Portfolio V 2.0 |
| **FILE NAME** | Addendum to Contract v3.pdf |
| **DOCUMENT ID** | a499f5e39d86f4a4192ccc1399e8c6fef86ee2ae |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Completed |

## Document History

| | | |
|---|---|---|
| ⌁ **SENT** | **01 / 07 / 2021** 22:41:01 UTC | Sent for signature to James Bulger (jbulger3@gmail.com) and Sam Sewell (samjsewell3@gmail.com) from l.roque@hiscapitalgroup.com IP: 201.171.156.213 |
| ◉ **VIEWED** | **01 / 07 / 2021** 22:52:59 UTC | Viewed by James Bulger (jbulger3@gmail.com) IP: 71.90.244.23 |
| ◉ **VIEWED** | **01 / 08 / 2021** 01:15:11 UTC | Viewed by Sam Sewell (samjsewell3@gmail.com) IP: 107.72.178.201 |
| ⌁ **SIGNED** | **01 / 08 / 2021** 01:17:33 UTC | Signed by Sam Sewell (samjsewell3@gmail.com) IP: 107.72.178.201 |
| ⌁ **SIGNED** | **01 / 08 / 2021** 16:11:39 UTC | Signed by James Bulger (jbulger3@gmail.com) IP: 174.223.1.148 |
| ⊘ **COMPLETED** | **01 / 08 / 2021** 16:11:39 UTC | The document has been completed. |

# ALABAMA RESIDENTIAL PURCHASE AGREEMENT

**I. The Parties**. This Real Estate Purchase Agreement ("Agreement") made on <u>14th day of December 2020</u> ("Effective Date") between:

<u>Florida Home Buy, LLC ("Buyer")</u> with a mailing address <u>of 2780 E Fowler Ave Tampa FL 33612</u>, who agrees to buy

**AND**

<u>James D. Bulger on behalf of Pinehurst LLC ("Seller")</u> with a mailing address of <u>2211 US Highway 31N</u>, <u>City of Deatsville, State of Alabama</u>, who agrees to sell and convey real and personal property as described in Sections II & III. Buyer and Seller shall be collectively known as the "Parties."

**II. Legal Description**. The real property is a: (check one)

[X] - Single-Family Home

☐ - Condominium

☐ - Planned Unit Development (PUD)

☐ - Duplex

☐ - Triplex

☐ - Fourplex

☐ - Other: _____

Street Address: <u>**409 Chisholm St Montgomery AL 36110**</u>

Tax Parcel Information (i.e., "Parcel ID" or "Tax Map & Lot"): N/A_____

Other Description: _____

**III. Personal Property**. In addition to the real property described in Section II, the Seller shall include the following personal property: NA_____
_____

The real property and personal property shall be collectively known as the "Property".

Page 1 of 9

*MW*
**Buyer's Initials** _____

*JB*
**Seller's Initials** _____

Doc ID: 094bde0692810f90...

**IV. Earnest Money**. After acceptance by all Parties, the Buyer agrees to make a payment in the amount of **$1,500 or 2.5% of the sales price** as consideration **by December 17ᵗʰ, 2020 at 9:00** ☒ AM ☐ PM ("Earnest Money"). The Earnest Money shall be applied to the Purchase Price at Closing and subject to the Buyer's ability to perform under the terms of this Agreement. Any Earnest Money accepted ☒ **is** ☐ **is not** required to be placed in a separate trust or escrow account in accordance with State law.

**V. Purchase Price and Terms.** The Buyer agrees to purchase the Property by payment of **$34,500.00 (Thirty Four Thousand Five Hundred Dollars)** as follows: (check one)

☒ **- All Cash Offer.** No loan or financing of any kind is required in order to purchase the Property. Buyer shall provide Seller written third (3ʳᵈ) party documentation verifying sufficient funds to close no later than **January 4ᵗʰ, 2021 at 5:00** ☐ AM ☒ PM. Seller shall have three (3) business days after the receipt of such documentation to notify Buyer, in writing, if the verification of funds is not acceptable. If Buyer fails to provide such documentation, or if Seller finds such verification of funds is not acceptable, Seller may terminate this Agreement. Failure of Seller to provide Buyer written notice of objection to such verification shall be considered acceptance of verification of funds.

☐ **- Bank Financing.** The Buyer's ability to purchase the Property is contingent upon the Buyer's ability to obtain financing under the following conditions: (check one)

    ☐ - Conventional Loan
    ☐ - FHA Loan (Attach Required Addendums)
    ☐ - VA Loan (Attach Required Addendums)
    ☐ - Other: _____

    a.) In addition, Buyer agrees, within a reasonable time, to make a good faith loan application with a credible financial institution;
    b.) If Buyer does not reveal a fact of contingency to the lender and this purchase does not record because of such nondisclosure after initial application, the Buyer shall be in default;
    c.) On or before _____, 20___, the Buyer will provide the Seller a letter from a credible financial institution verifying a satisfactory credit report, acceptable income, source of down payment, availability of funds to close, and that the loan approval ☐ **is** ☐ **is not** contingent on the lease, sale, or recording of another property;
    d.) In the event the Buyer fails to produce the aforementioned letter or other acceptable verification by the date above in Section V(c), this Agreement may be terminated at the election of the Seller with written notice provided to the Buyer within ____ days from the date in Section V(c);
    e.) Buyer must obtain Seller's approval, in writing, to any change to the letter described in Section V(c) regarding the financial institution, type of financing, or allocation of closing costs; and

*MW*

**Buyer's Initials** _____

*JB*

**Seller's Initials** _____

Doc ID: ████████████████████████████████████████████████████

f.) Buyer agrees to pay all fees and satisfy all conditions, in a timely manner, required by the financial institution for processing of the loan application. Buyer agrees the interest rate offered by lender or the availability of any financing program is not a contingency of this Agreement, so long as Buyer qualifies for the financing herein agreed. Availability of any financing program may change at any time. Any licensed real estate agent hired by either party is not responsible for representations or guarantees as to the availability of any loans, project and/or property approvals or interest rates.

☐ - **Seller Financing**. Seller agrees to provide financing to the Buyer under the following terms and conditions:

a.) **Loan Amount**: $_____
b.) **Down Payment**: $_____
c.) **Interest Rate** (per annum): _____%
d.) **Term**: _____ ☐ Months ☐ Years
e.) **Documents**: The Buyer shall be required to produce documentation, as required by the Seller, verifying the Buyer's ability to purchase according to the Purchase Price and the terms of the Seller Financing. Therefore, such Seller Financing is contingent upon the Seller's approval of the requested documentation to be provided on or before _____, 20____. The Seller shall have until _____, 20____ to approve the Buyer's documentation. In the event Buyer fails to obtain Seller's approval, this Agreement shall be terminated with the Buyer's Earnest Money being returned within five (5) business days.

**VI. Sale of Another Property**. Buyer's performance under this Agreement: (check one)

☒ - **Shall not** be contingent upon selling another property.

☐ - **Shall be** contingent upon selling another property with a mailing address of _____, City of _____, State of _____ within _____ days from the Effective Date.

**VII. Closing Costs**. The costs attributed to the Closing of the Property shall be the responsibility of ☐ **Buyer** ☐ **Seller** ☒ **Both Parties**. The fees and costs related to the Closing shall include but not be limited to a title search (including the abstract and any owner's title policy), preparation of the deed, transfer taxes, recording fees, and any other costs by the title company that is in standard procedure with conducting the sale of a property.

**VIII. Funds at Closing**. Buyer and Seller agree that before the recording can take place, funds provided shall be in one (1) of the following forms: cash, interbank electronic transfer, money order, certified check or cashier's check drawn on a financial institution located in the State, or any above combination that permits the Seller to convert the deposit to cash no later than the next business day.

*MW*

*JB*

**Buyer's Initials** _____ **Seller's Initials** _____

Doc ID: 094bde0692810f90

**IX. Closing.** This transaction shall be closed on <u>January 4th, 2021</u> at <u>5:00</u> ☐ AM ☒ PM or earlier at the office of a title company to be agreed upon by the Parties ("Closing"). Any extension of the Closing must be agreed upon, in writing, by Buyer and Seller. Real estate taxes, rents, dues, fees, and expenses relating to the Property for the year in which the sale is closed shall be prorated as of the Closing. Taxes due for prior years shall be paid by Seller.

**X. Survey.** Buyer may obtain a survey of the Property before the Closing to assure that there are no defects, encroachments, overlaps, boundary line or acreage disputes, or other such matters, that would be disclosed by a survey ("Survey Problems"). The cost of the survey shall be paid by the Buyer. Not later than <u>**10**</u> business days prior to the Closing, Buyer shall notify Seller of any Survey Problems which shall be deemed to be a defect in the title to the Property. Seller shall be required to remedy such defects within <u>**5**</u> business days and prior to the Closing.

If Seller does not or cannot remedy any such defect(s), Buyer shall have the option of canceling this Agreement, in which case the Earnest Money shall be returned to Buyer.

**XI. Mineral Rights.** It is agreed and understood that all rights under the soil, including but not limited to water, gas, oil, and mineral rights shall be transferred by the Seller to the Buyer at Closing.

**XII. Title.** Seller shall convey title to the property by warranty deed or equivalent. The Property may be subject to restrictions contained on the plat, deed, covenants, conditions, and restrictions, or other documents noted in a Title Search Report. Upon execution of this Agreement by the Parties, Seller will, at the shared expense of both Buyer and Seller, order a Title Search Report and have delivered to the Buyer.

Upon receipt of the Title Search Report, the Buyer shall have <u>3 business days</u> to notify the Seller, in writing, of any matters disclosed in the report which are unacceptable to Buyer. Buyer's failure to timely object to the report shall constitute acceptance of the Title Search Report.

If any objections are made by Buyer regarding the Title Search Report, mortgage loan inspection, or other information that discloses a material defect, the Seller shall have <u>3 business days</u> from the date the objections were received to correct said matters. If Seller does not remedy any defect discovered by the Title Search Report, Buyer shall have the option of canceling this Agreement, in which case the Earnest Money shall be returned to Buyer.

After Closing, Buyer shall receive an owner's standard form policy of title insurance insuring marketable title in the Property to Buyer in the amount of the Purchase Price, free and clear of the objections and all other title exceptions agreed to be removed as part of this transaction.

*MW*
**Buyer's Initials** _____

*JB*
**Seller's Initials** _____

Doc ID: 094bde0692810f90

**XIII. Property Condition.** Seller agrees to maintain the Property in its current condition, subject to ordinary wear and tear, from the time this Agreement comes into effect until the Closing. Buyer recognizes that the Seller, along with any licensed real estate agent(s) involved in this transaction, make no claims as to the validity of any property disclosure information. Buyer is required to perform their own inspections, tests, and investigations to verify any information provided by the Seller. Afterward, the Buyer shall submit copies of all tests and reports to the Seller at no cost.

Therefore, Buyer shall hold the right to hire licensed contractors, or other qualified professionals, to further inspect and investigate the Property until <u>January 4th, 2021</u> at 5:00 ☐ AM ☒ PM.

After all inspections are completed, Buyer shall have until <u>December 28th, 2020</u> at 5:00 ☐ AM ☒ PM to present any new property disclosures to the Seller in writing. The Buyer and Seller shall have <u>3 business days</u> to reach an agreement over any new property disclosures found by the Buyer. If the Parties cannot come to an agreement, this Agreement shall be terminated with the Earnest Money being returned to the Buyer.

If the Buyer fails to have the Property inspected or does not provide the Seller with written notice of the new disclosures on the Property, in accordance with this Agreement, Buyer hereby accepts the Property in its current condition and as described in any disclosure forms presented by the Seller.

In the event improvements on the Property are destroyed, compromised, or materially damaged prior to Closing, the Agreement may be terminated at Buyer's option.

**XIV. Seller's Indemnification.** Except as otherwise stated in this Agreement, after recording, the Buyer shall accept the Property AS IS, WHERE IS, with all defects, latent or otherwise. Neither Seller nor their licensed real estate agent(s) or any other agent(s) of the Seller, shall be bound to any representation or warranty of any kind relating in any way to the Property or its condition, quality or quantity, except as specifically set forth in this Agreement or any property disclosure, which contains representations of the Seller only, and which is based upon the best of the Seller's personal knowledge.

**XV. Appraisal.** Buyer's performance under this Agreement: (check one)

☐ - **Shall not** be contingent upon the appraisal of the Property being equal to or greater than the agreed upon Purchase Price.

☐ - **Shall** be contingent upon the appraisal of the Property being equal to or greater than the agreed upon Purchase Price. If the Property does not appraise to at least the amount of the Purchase Price, or if the appraisal discovers lender-required repairs, the Parties shall have _____ business days to re-negotiate this Agreement ("Negotiation Period"). In such event the Parties cannot come to an agreement during the Negotiation Period, this Agreement shall terminate with the Earnest Money being returned to the Buyer.

Buyer's Initials _____    Seller's Initials _____

Doc ID: 094bde0692810f90...

**XVI. Required Documents**. Prior to the Closing, the Parties agree to authorize all necessary documents, in good faith, in order to record the transaction under the conditions required by the recorder, title company, lender, or any other public or private entity.

**XVII. Termination**. In the event this Agreement is terminated, as provided in this Agreement, absent of default, any Earnest Money shall be returned to the Buyer, in-full, within _____ business days with all parties being relieved of their obligations as set forth herein.

**XVIII. Sex Offenders**. Section 2250 of Title 18, United States Code, makes it a federal offense for sex offenders required to register pursuant to the Sex Offender Registration and Notification Act (SORNA), to knowingly fail to register or update a registration as required. State convicted sex offenders may also be prosecuted under this statute if the sex offender knowingly fails to register or update a registration as required, and engages in interstate travel, foreign travel, or enters, leaves, or resides on an Indian reservation.

A sex offender who fails to properly register may face fines and up to ten (10) years in prison. Furthermore, if a sex offender knowingly fails to update or register as required and commits a violent federal crime, he or she may face up to thirty (30) years in prison under this statute. The Buyer may seek more information online by visiting https://www.nsopw.gov/.

**XIX. Time**. Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter and they may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.

**XX. Buyer's Default**. Seller's remedies shall be limited to liquidated damages in the amount of the Earnest Money set forth in Section IV. It is agreed that such payments and things of value are liquidated damages and are Seller's sole and only remedy for Buyer's failure to perform the obligations of this Agreement. The Parties agree that Seller's actual damages in the event of Buyer's default would be difficult to measure, and the amount of the liquidated damages herein provided for is a reasonable estimate of such damages.

**XXI. Seller's Default**. Buyer may elect to treat this Agreement as cancelled, in which case all Earnest Money paid by Buyer hereunder shall be returned and Buyer may recover such damages as may be proper, or Buyer may elect to treat this Agreement as being in full force and effect and Buyer shall have the right to specific performance or damages, or both.

**XXII. Earnest Money Dispute**. Notwithstanding any termination of this Agreement, the Parties agree that in the event of any controversy regarding the release of the Earnest Money that the matter shall be submitted to mediation as provided in Section XXIII.

Buyer's Initials _____    Seller's Initials _____

Doc ID:

**XXIII. Dispute Resolution.** Buyer and Seller agree to mediate any dispute or claim arising out of this Agreement, or in any resulting transaction, before resorting to arbitration or court action.

- a.) **Mediation.** If a dispute arises, between or among the Parties, and it is not resolved prior to or after recording, the Parties shall first proceed in good faith to submit the matter to mediation. Costs related to mediation shall be mutually shared between or among the Parties. Unless otherwise agreed in mediation, the Parties retain their rights to proceed to arbitration or litigation.
- b.) **Arbitration.** The Parties agree that any dispute or claim in law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The arbitrator is required to be a retired judge or justice, or an attorney with at least five (5) years of residential real estate law experience unless the Parties mutually agree to a different arbitrator. Under arbitration, the Parties shall have the right to discovery in accordance with Alabama law. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this Agreement to arbitrate shall be governed by the Federal Arbitration Act.
- c.) **Exclusions.** The following matters shall be excluded from the mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed, mortgage or installment land sale contract as defined in accordance with Alabama law; (ii) an unlawful detainer action, forcible entry detainer, eviction action, or equivalent; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions of this Section.

**XXIV. Governing Law.** This Agreement shall be interpreted in accordance with the laws in the State of Alabama.

**XXV. Terms and Conditions of Offer.** This is an offer to purchase the Property in accordance with the above stated terms and conditions of this Agreement. If at least one, but not all, of the Parties initial such pages, a counter offer is required until an agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of acceptance. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of licensed real estate agent(s) compensation. This Agreement and any supplement, addendum or modification, including any copy, may be signed in two or more counterparts, all of which shall constitute one and the same writing.

**XXVI. Binding Effect.** This Agreement shall be for the benefit of, and be binding upon, the Parties, their heirs, successors, legal representatives, and assigns, which therefore, constitutes the entire agreement between the Parties. No modification of this Agreement shall be binding unless signed by both Buyer and Seller.

Buyer's Initials _____ Seller's Initials _____

Doc ID: ____

**XXVII. Severability.** In the event any provision or part of this Agreement is found to be invalid or unenforceable, only that particular provision or part so found, and not the entire Agreement, will be inoperative.

**XXVIII. Offer Expiration.** This offer to purchase the Property as outlined in this Agreement shall be deemed revoked and the Earnest Money shall be returned unless this Agreement is signed by Seller and a copy of this Agreement is personally given to the Buyer by **December 17th, 2020** at 5:00 ☐ AM ☒ PM.

**XXIX. Acceptance.** Seller warrants that Seller is the owner of the Property or has the authority to execute this Agreement. Therefore, by the Seller's authorization below, he/she/they accepts the above offer and agrees to sell the Property on the above terms and conditions and agrees to the agency relationships in accordance with any agreement(s) made with licensed real estate agent(s). Seller has read and acknowledges receipt of a copy of this Agreement and authorizes any licensed real estate agent(s) to deliver a signed copy to the Buyer.

Delivery may be in any of the following: (i) hand delivery; (ii) email under the condition that the party transmitting the email receives electronic confirmation that the email was received to the intended recipient; and (iii) by facsimile to the other party or the other party's licensee, but only if the transmitting fax machine prints a confirmation that the transmission was successful.

**XXX. Licensed Real Estate Agent(s).** If Buyer or Seller have hired the services of licensed real estate agent(s) to perform representation on their behalf, he/she/they shall be entitled to payment for their services as outlined in their separate written agreement.

**XXXI. Disclosures.** It is acknowledged by the Parties that: (check one)

☐ - There are no attached addendums or disclosures to this Agreement.

☐ - The following addendums or disclosures are attached to this Agreement:

    ☐ - Lead-Based Paint Disclosure Form

    ☐ - _____

    ☐ - _____

    ☐ - _____

**XXXII. Additional Terms and Conditions.** <u>Estoppel Letter/Certificate to provide confirmation by the tenant of the terms of the rental agreement and their landlord's proposed transaction with a third party. The Estoppel Letter/Certificate shall state the amount of rent paid by the tenant, the amount of security deposit held by the landlord and the expiration of the lease agreement. Furthermore, the estoppel certificate shall explain if the tenant may have any claims against the landlord which may affect the buyer's decision to complete the proposed transaction.</u>

Buyer's Initials _____   Seller's Initials _____

Doc ID: 094bde0692810f90f5e30fa3f63f43769f83830745e2f000c4

**XXXIII. Entire Agreement.** This Agreement together with any attached addendums or disclosures shall supersede any and all other prior understandings and agreements, either oral or in writing, between the parties with respect to the subject matter hereof and shall constitute the sole and only agreements between the parties with respect to the said Property. All prior negotiations and agreements between the parties with respect to the Property hereof are merged into this Agreement. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any party or by anyone acting on behalf of any party, which are not embodied in this Agreement and that any agreement, statement or promise that is not contained in this Agreement shall not be valid or binding or of any force or effect.

**XXXIV. Signature**

Date: 01 / 15 / 2021

_____
**Seller's Signature**

_____
James D Bulger

Date: 01 / 18 / 2021

_Michael Williams_
_____
**Buyer's Signature**

Buyer's Initials _____    Seller's Initials _____

# TRUST AGREEMENT
## 409 CHISHOLM ST

### Trust Agreement made this 1st Day of January, 2021.

ELLIOT RAMOS, AS A TRUSTEE OF 409 CHISHOLM ST LAND TRUST, A FLORIDA TRUST DATED JANUARY 1, 2021

.

ELLIOT RAMOS, as Trustee of the trust created hereby, (hereinafter referred to as the "Trustee", which designation shall include all successor trustees), whose address is 284 TOWERVIEW DRIVE W HAINES CITY FL 33844 .

Whereas, the Beneficiaries are about to convey or cause to be conveyed in the near future certain real property to the Trustee, and the Trustee has agreed to accept such conveyance and hold the real property as a fiduciary in trust for the Beneficiaries under the terms and conditions set forth below.

Now, Therefore, the parties hereby agree as follows:

1. **Declaration of Trust.** The trust created by the settlors herein shall be known as the 409 CHISHOLM ST (hereinafter referred to as the "Trust").

2. **Trust Property.** The corpus of the trust will be real property (hereinafter referred to as the "Trust Property") that the Beneficiaries will convey or cause to be conveyed fee simple absolute by deed. Said property is described in the attached Exhibit "B." The Trustee shall hold full legal and equitable title to said property, in trust, only for the use and purpose stated under the terms of this Agreement and any valid addendum hereto duly executed by the parties. If, permissible in the state in which the real property sits, title shall be held in the name of the Trust itself, to wit: 409 CHISHOLM ST , MONTGOMERY, AL, 36110 Trust," otherwise, the Trustee shall hold title in his or her name "an individual, as Trustee, and not personally, of the 409 CHISHOLM ST LAND TRUST.

3. **Trust Purpose.** The objects and purposes of this Trust shall be to hold full legal and equitable title to the Trust Property until its sale, disposition or liquidation, or until the trust is terminated or expires by its own terms and/or as a matter of law. The Trustee shall not undertake any activity that is not strictly necessary to the achievement of the foregoing objects and purposes, nor shall the Trustee transact business within the meaning of applicable state law, or any other law, nor shall this Agreement be deemed to be, or create or evidence the existence of a corporation, de facto or de jure, or a Massachusetts Trust, or any other type of business trust, or an association in the nature of a corporation, or a co partnership or joint venture, limited liability company, or similar limited liability association by or between the Trustee and the Beneficiaries, or by or between the Beneficiaries.

4. **Consideration.** The Trustee has paid no consideration for the conveyance of real property described herein. The conveyance will be accepted and held by the Trustee subject to all existing liens, encumbrances, easements, restrictions or other clouds or claims against the title thereto, whether the same are of record or otherwise. The property will be held on the trusts, terms and conditions and for the purposes hereinafter set forth, until the whole of the trust estate is conveyed, free of this trust, as hereinafter provided.

_____Trustee

Trust Agreement

1 of 10 [PACKAGE]

Case 21-31333   Doc 65-16   Filed 11/22/21   Entered 11/22/21 23:12:24   Desc
Exhibit P   Page 20 of 45

5. **Rights and Duties of the Beneficiaries.** The persons and/or entities named in the attached Exhibit "B" (including their heirs, assigns or successors) hereof are the Beneficiaries of this Trust, and as such, shall be entitled to all of the earnings, avails and proceeds of the Trust Property according to their interests set opposite their respective names. No Beneficiary shall have any legal or equitable right, title or interest, as realty, in or to any real estate held in trust under this Agreement, or the right to require partition of that real estate, but shall have only the rights, as personalty, set out below, and the death of a Beneficiary shall not terminate this Trust or in any manner affect the powers of the Trustee.

The interests of the Beneficiaries shall consist solely of the following rights respecting the Trust Property:

  a. The right to direct the Trustee to convey or otherwise deal with the title to the Trust Property as hereinafter set out.

  b. The right to participate in the management and control the Trust Property.

  c. The right to receive the proceeds and avails from the rental, sale, mortgage, or other disposition of the Trust Property.

6. **Powers and Duties of Trustee.** The Trustee shall not copy or show this agreement to any individual or entity other than the beneficiaries or successor trustees, nor shall the Trustee reveal the identity of the beneficiaries or the trust property to any individual or entity except by way of a Court Order duly executed by a Justice or Magistrate of a Court of competent jurisdiction. The trustee shall not record this agreement or the name of any of the beneficiaries in any place of public record.

The Trustee, as the sole owner of record of the Trust Property, have the following powers with respect the Trust Property, at to the written direction of the Beneficiary:

a. To issue notes or bonds and to secure the payment of the same by executing a deed of trust, mortgage or other security instrument conveying a lien on the whole or any part of the Trust Property;

b. To borrow money, giving notes therefor, or to assume existing debts related to the property signed by him or her in the capacity as Trustee;

c. To invest such part of the capital and profits therefrom and the proceeds of the sale of bonds and notes in such real estate, equities in real estate, and mortgages in real estate in the United States of America;

d. To have, together with, and at the direction of the beneficiaries, the exclusive management and control of the property as if he were the absolute owner thereof, and the full power to do all things necessary and perform all acts which in his or her judgment are necessary and proper for the protection and preservation of the Trust Property and for the interest of the Beneficiaries in the property of the Trust, subject to the restrictions, terms, and conditions set forth herein;

e. To take possession of the trust property in the event it becomes vacant;

f. To purchase any additional real property for the Trust at such times and on such terms as may be beneficial to the beneficiary;

g. To rent or lease the whole or any part of the Trust Property for long or short terms, but not for terms exceeding the term of the Trust then remaining;

h. To repair, alter, tear down, add to, or erect any building or buildings upon land belonging to the Trust; to fill, grade, drain, improve, and otherwise develop any land belonging to the Trust; to carry on, operate, or manage any building, apartment house, mobile home lot or hotel belonging to the Trust;

_____
Trustee

Case 21-31333   Doc 65-16   Filed 11/22/21   Entered 11/22/21 23:12:24   Desc
Exhibit P   Page 21 of 45

i. To make, execute, acknowledge, and deliver all deeds, releases, mortgages, leases, contracts, options, agreements, instruments, and other obligations of whatsoever nature relating to the Trust Property, and generally to have full power to do all things and perform all acts necessary to make the instruments proper and legal (and to do so by a duly appointed attorney-in-fact).

j. To collect notes, rents, obligations, dividends, and all other payments that may be due and payable to the Trust; to deposit the net proceeds thereof, as well as any other moneys from whatsoever source they may be derived, in any suitable bank or depository, and to draw the same from time to time for the purposes herein provided, paying the net proceeds therefrom to the beneficiaries:

k. To pay all lawful taxes and assessments and the necessary expenses of the Trust; to employ such officers, brokers, property managers, engineers, architects, carpenters, contractors, agents, counsel, and such other persons as may seem expedient, to designate their duties and fix their compensation; to fix a reasonable compensation for their own services to the Trust, as organizers thereof.

l. To represent the Trust and the Beneficiaries in all suits and legal proceedings relating to the Trust Property in any court of law of equity, or before any other bodies or tribunals; to begin suits and to prosecute them to final judgment or decree; to compromise claims or suits, and to submit the same to arbitration when, in their judgment, such course is necessary or proper.

Trustee in addition to the other duties herein imposed upon him or her, shall have the obligation to:

n. To keep a careful and complete record of all the beneficial interests in the Trust Property with the name and residence of the person or persons owning such beneficial interest, and such other items as they may deem of importance or as may be required by the Beneficiaries.

o. To keep careful and accurate books showing the receipts and disbursements he or she has made on behalf of the Trust and also of the Trust Property and to keep books of the Trust open to the inspection of the Beneficiaries.

Nothing in this agreement shall preclude the powers and authorities of a trustee as defined by state law, code or statute, unless such additional powers shall cause this agreement to be construed as a "trust" as defined in Section 301.7701-4(a) of the Procedure and Administration Regulations of the Internal Revenue Code.

7. Compensation of Trustee. The Beneficiaries jointly and severally agree that the Trustee shall receive the sum of $0.00 per year for his or her services as Trustee.

8. Liability of Trustee. The Trustee and his or her successor as Trustee shall not be required to give a bond, and each Trustee shall be liable only for his own acts and then only as a result of his own gross negligence or bad faith.

9. Removal of Trustee. The Beneficiaries shall have the power to remove a Trustee from his office or appoint a successor to succeed him or her. This removal must by in writing, signed by all of the beneficiaries. Upon Seven (7) days written notice, the Trustee shall deliver all books, records, bank account information, keys, security deposits, leases and funds in his or her possession, and execute any documents necessary to convey title and/or authority over the Trust and the Trust Property to the Successor Trustee.

_____ Trustee
Trust Agreement

3 of 10 [PACKAGE]

10. **Resignation of Trustee**. Any Trustee may resign his or her office with thirty (30) days written notice to Beneficiaries. The Beneficiaries shall appoint the Trustee named as successor Trustee herein (or proceed to elect a new Trustee) to take the place of the Trustee who had resigned, but the resignation shall not take effect until an affidavit signed and acknowledged before a notary public by both the resigning Trustee and the new Trustee shall have been procured in a form which is acceptable for recording in the registries of deeds of all the counties in which properties held under this instrument are situated. If the Trust property is recorded in the name of the trustee himself, the resigning trustee shall also a execute a general warranty deed in the proper form and manner for recording the registry of deeds in the county in which the property is situate. Said deed and/or affidavit need not be recorded unless so requested of the new Trustee at the written direction of the Beneficiaries.

In the event a new trustee is not appointed within Sixty (60) days after notice the resignation of the existing Trustee is received by the beneficiaries, this agreement shall terminate, and the resigning Trustee shall deliver all books, records, bank account information, keys, security deposits, leases and funds in his or her possession, and execute any documents necessary to convey title to the trust property to the beneficiaries as their interests may appear.

Whenever a new Trustee shall have been elected or appointed to the office of Trustee and shall have assumed the duties of office, he or she shall succeed to the title of all the properties of the Trust and shall have all the powers and be subject to all the restrictions granted to or imposed upon the Trustee by this agreement, and every Trustee shall have the same powers, rights, and interests regarding the Trust Property, and shall be subject to the same restrictions and duties as the original Trustee, except as the same shall have been modified by amendment, as herein provided for.

11. **Death or Incapacity of Trustee**. Upon the death, termination, resignation or physical or mental incapacity of the Trustee, the following individual(s) shall immediately be appointed as successor Trustee, with the full powers and duties of the former Trustee:

    X Stephanie Forrelli , whose address is 10032 Bellwood Court Orlando, FL 32821.

    or, if said individual is not then living or is unable or unwilling to act as trustee, then

In the event none of said individuals are then living or are unable or unwilling to act as Trustee, then a new Trustee will be elected and appointed as per paragraph "10" herein.

In the event of the death of any beneficiary, his or her right and interest hereunder, except as otherwise provided, shall pass to his or her executor or administrator and to his heirs at law.

12. **Beneficiary not Bound by Trustee**. The Trustee is not an agent or partner of, and shall have no power to bind the Beneficiaries personally and, in every written contract he may enter into, reference shall be made to this declaration; and any person or corporation contracting with the Trustee, as well as any beneficiary, shall look to the funds and the Trust Property for payment under such contract, or for the payment of any debt, mortgage, judgment, or decree, or for any money that may otherwise become due or payable, whether by reason or failure of the Trustee to perform the contract, or for any other reason, and neither the Trustee nor the Beneficiaries shall be liable personally therefor.

Trustee

Trust Agreement

Case 21-31333   Doc 65-16   Filed 11/22/21   Entered 11/22/21 23:12:24   Desc
Exhibit P   Page 23 of 45

13. **Dealings with Trustee.** No party dealing with the Trustee in relation to the Trust Property in any manner whatsoever, and, without limiting the foregoing, no party to whom the property or any part of it or any interest in it shall be conveyed, contracted to be sold, leased or mortgaged by the Trustee, shall be obliged to see to the application of any purchase money, rent or money borrowed or otherwise advanced on the property; to see that the terms of this Trust Agreement have been complied with; to inquire into the authority, necessity or expediency of any act of the Trustee; or be privileged to inquire into any of the terms of this Trust Agreement.

14. **Recording of Agreement.** Neither this Agreement nor any summary of the contents hereof shall be placed on record in the county in which the Trust Property is situated, or elsewhere, but if it is so recorded, that recording shall not be considered as notice of the rights of any person under this Agreement derogatory to the title or powers of the Trustee.

15. **Term of Agreement.** This agreement shall continue for a period of twenty years from the date of its execution. The Trustee shall contact all Beneficiaries in writing at least twelve months prior to that time. The trustee shall place the Trust Property for public sale, pay all debts due and owing with regard to the Trust Property, and remit the proceeds to the Beneficiaries according to their respective interests in the Trust. The Beneficiaries may choose to renew this agreement for a term of twenty additional years by submitting their intention in writing to the Trustee.

If any portion of the Trust Property is in any manner or time period capable of being held in this Land Trust for longer period of time than is permitted under the laws of the state law governing this Agreement, or the vesting of any interest under this Land Trust could possibly occur after the end of such permitted time period, then, upon the occurrence of the foregoing, the Trustee is directed to immediately terminate the Trust and to distribute the Trust Property to the Beneficiaries as their respective interests may appear at the time of the termination of the Trust. As much as possible, the Trustee will maintain the Trust Property intact and not liquidate it, but, rather, distribute the Trust Property in kind.

16. **Income Tax Returns.** The Trustee shall not be obligated to file any income tax returns with respect to the Trust, except as required by law, and the Beneficiaries individually shall report and pay their share of income taxes on the earnings and avails of the Trust Property or

17. **Assignment of Beneficial Interest.** The interest of a Beneficiary, or any part of that interest, may be transferred only by a written assignment, executed in duplicate and delivered to the Trustee. If there is more than one beneficiary, the remaining beneficiaries must first approve of said transfer in writing. The remaining beneficiaries shall have a sixty (60) day right of first refusal to purchase said interest. Unless stated otherwise, any assignment of beneficial interest hereunder shall also include the power of direction and revocation of this trust agreement. Any beneficiary who assigns his interest in full shall forever waive his right to revoke this trust agreement.

18. **Individual Liability of Trustee.** The Trustee shall not be required, in dealing with the Trust Property or in otherwise acting under this Agreement, to enter into any individual contract or other individual obligation whatsoever; nor to make itself individually liable to pay or incur the payment of any damages, attorneys' fees, fines, penalties, forfeitures, costs, charges or other sums of money whatsoever. The Trustee shall have no individual liability or obligation whatsoever arising from its ownership, as Trustee, of the legal title to the Trust Property, or with respect to any act done or contract entered into or indebtedness incurred by it in dealing with the Trust Property or in otherwise acting under this Agreement, except only as far as the Trust Property and any trust funds in the actual possession of the Trustee shall be applicable to the payment and discharge of that liability or obligation.

_____Trustee
Trust Agreement                          5 of 10 [PACKAGE]

Case 21-31333   Doc 65-16   Filed 11/22/21   Entered 11/22/21 23:12:24   Desc
Exhibit P   Page 24 of 45

19. Reimbursement and Indemnification of Trustee. If the Trustee shall pay or incur any liability to pay any money on account of this Trust, or incur any liability to pay any money on account of being made a party to any litigation as a result of holding title to the Trust Property or otherwise in connection with this Trust the Beneficiaries, jointly and severally, agree that on demand they will pay to the Trustee all such payments made or liabilities incurred by the Trustee, together with its expenses, including reasonable attorneys' fees, and that they will indemnify and hold the Trustee harmless of and from any and all payments made or liabilities incurred by it for any reason whatsoever as a result of this Agreement.

20. Unanimous Direction of Beneficiaries. Wherever an act, decision or direction is required by the "Beneficiary" or "Beneficiaries" herein, said designation shall be deemed to mean all of the beneficiaries acting in a unanimous agreement, unless a lesser percentage is so specified.

21. Governing Law. This agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of - ALABAMA-. The parties herein waive trial by jury and agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in the County in which the property sits. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled. In such event, no action shall be entertained by said court or any court of competent jurisdiction if filed more than one year subsequent to the date the cause(s) of action actually accrued regardless of whether damages were otherwise as of said time calculable.

22. Binding Effect. The terms and conditions of this Agreement shall inure to the benefit of and be binding upon any successor trustee under it, as well as upon the executors, administrators, heirs, assigns and all other successors in interest of the Beneficiaries.

23. Annual Statements. There shall be no annual meeting of the Beneficiaries, but the Trustee shall prepare an annual report of their receipts and disbursements for the fiscal year preceding, which fiscal year shall coincide with the calendar year, and a copy of the report shall be sent by mail to the Beneficiaries not later than February 28 of each year.

24. Termination of this Agreement. This Trust may be terminated on thirty (30) days written notice signed by all of beneficiaries and delivered to the Trustee. Upon the termination of this Agreement, the Trustee shall deliver all books, records, bank account information, keys, security deposits, leases and funds in his or her possession, and execute any documents necessary to convey title to the trust property to the beneficiaries as their interests may appear.

25. Entire Agreement. This Agreement contains the entire understanding between the parties and may be amended, revoked or terminated only by written agreement signed by the Trustee and all of the Beneficiaries.

Trustee
Trust Agreement

6 of 10 [PACKAGE]

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the day and year first above written.

The beneficiaries:

The Trustees: ELLIOT
RAMOS

ELLIOT RAMOS , TRUSTEE

# EXHIBIT "A"
## SCHEDULE OF TRUST MEMBERS
### THE AMOUNT OF CONTRIBUTION IN THIS AGREEMENT MUST BE PAID BEFORE PROFIT SHARES ARE DISTRIBUTED.

Trustee

Trust Agreement                              8 of 10 [PACKAGE]

## EXHIBIT "A"
## SCHEDULE OF TRUST MEMBERS
### THE AMOUNT OF CONTRIBUTION IN THIS AGREEMENT MUST BE PAID BEFORE PROFIT SHARES ARE DISTRIBUTED.

Trustee
Trust Agreement

Case 21-31333   Doc 65-16   Filed 11/22/21   Entered 11/22/21 23:12:24   Desc
Exhibit P   Page 28 of 45

EXHIBIT "B"
TRUST PROPERTY

Property Address
409 CHISHOLM ST . MONTGOMERY, AL. 36110

Legal
TBD

APN:
TBD

409 CHISHOLM ST

ELLIOT RAMOS, AS A TRUSTEE OF 409
CHISHOLM ST LAND TRUST, A FLORIDA
TRUST DATED JANUARY 1, 2021

Trustee
Trust Agreement

10 of 10 [PACKAGE]

THIS INSTRUMENT PREPARED BY:
Jeff W. Parmer
Law Offices of Jeff W. Parmer, LLC
2204 Lakeshore Drive, Suite 125
Birmingham, AL 35209

SEND TAX NOTICE TO:
**Elliot Ramos, as a Trustee**
**284 Towerview Drive W**
**Haines City, FL 33844**

STATE OF ALABAMA      )

                               **GENERAL WARRANTY DEED**

COUNTY OF JEFFERSON    )

KNOW ALL MEN BY THESE PRESENTS: That, for and in consideration of **THIRTY EIGHT THOUSAND ONE HUNDRED AND 00/100 ($38,100.00) DOLLARS**, and other good and valuable consideration, this day in hand paid to the undersigned GRANTOR, **James D. Bulger, an unmarried person** (hereinafter referred to as GRANTOR), the receipt whereof is hereby acknowledged, the GRANTOR does hereby give, grant, bargain, sell and convey unto the GRANTEE, **Elliot Ramos, as a Trustee of 409 Chisholm St. Land Trust, a Florida Trust Dated January 1, 2021** (hereinafter referred to as GRANTEE), its successors and assigns, the following described Real Estate, lying and being in the County of **Montgomery**, State of Alabama, to-wit:

> **Lot 34, in Block F, according to the Map of Gardendale Estates Plat No. 1, as the same appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 12, at Page 138.**

> Subject to existing easements, current taxes, restrictions, set-back lines and rights of way, if any, of record.

> Property Address: **409 Chisholm Street, Montgomery, AL 36110**

> All of the above-recited purchase price was paid from a mortgage loan closed simultaneously herein.

TO HAVE AND TO HOLD, the tract or parcel of land above described together with all and singular the rights, privileges, tenements, appurtenances, and improvements unto the said GRANTEE, its successors and assigns forever.

AND SAID GRANTOR, for said GRANTOR, GRANTOR'S heirs, successors, executors and administrators, covenants with GRANTEE, and with GRANTEE'S successors and assigns, that GRANTOR is lawfully seized in fee simple of the said Real Estate; that said Real Estate is free and clear from all Liens and Encumbrances, except as herein above set forth, and except for taxes due for the current and subsequent years, and except for any Restrictions pertaining to the Real Estate of record in the Probate Office of said County; and that GRANTOR will, and GRANTOR'S heirs, executors and administrators shall, warrant and defend the same to said GRANTEE, and GRANTEE'S successors and assigns, forever against the lawful claims of all persons.

IN WITNESS WHEREOF, said GRANTOR has hereunto set his/her hand and seal this 3rd day of February, 2021.

_James D. Bulger_

STATE OF Alabama
COUNTY OF Elmore

I, the undersigned, a Notary Public, in and for said County and State, hereby certify that **James D. Bulger** whose name is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of the Instrument, he/she signed his/her name voluntarily on the day the same bears date.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 3rd day of February, 2021.

_Jeff W. Parmer_

NOTARY PUBLIC
My Commission Expires: 1-3-2027

PREPARED BY AND RECORDING REQUESTED BY:

HIS CAPITAL FUNDING
2151 Consulate Dr Ste 6
Orlando, FL 32801

This is a purchase money mortgage, the proceeds of which have been applied to the purchase price of the property herein described.

AND WHEN RECORDED MAIL TO:

HIS CAPITAL FUNDING
2151 Consulate Dr Ste 6
Orlando, FL 32801

_____
(Space Above for Recorder's Use)

## MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Security Instrument (as hereinafter defined) serves as a Fixture Filing under the Alabama Uniform Commercial Code (the "Uniform Commercial Code").

<u>DEFINITIONS</u>

In addition to the capitalized terms defined where used, words used in multiple sections of this Security Instrument and/or the corresponding Loan Documents (as hereinafter defined) are defined below.

(A)    "**Borrower**" is ELLIOT RAMOS AS AS TRUSTEE OF 409 CHISHOLM ST LAND TRUST, A FLORIDA TRUST  DATED JANUARY 1, 2021. Borrower is the mortgagor under this Security Instrument.

(B)    "**Lender**" is HIS CAPITAL FUNDING. a California corporation, its successors and assigns. Lender's address is 2151 Consulate Dr Ste 6, Orlando, FL 32801. Lender is the mortgagee under this Security Instrument.

(C)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under the Security Instrument(s).

Security Instrument - Page 1 of 9
Loan ID: FL6106
Property Address: 409 CHISHOLM ST, MONTGOMERY, AL 36110

(D)   **"Loan Agreement"** means that certain Loan Agreement dated February 4, 2021, between Borrower and Lender, the terms of which are incorporated herein by this reference.

(E)   **"Loan Documents"** means collectively the Loan Agreement, Note, Security Instrument(s) and all other documents executed and/or delivered in connection with the Loan.

(F)   **"Note"** means the promissory note signed by Borrower and dated February 4, 2021. The Note states that Borrower owes Lender Thirty Four Thousand Five Hundred and 0/100 Dollars (U.S. $34,500.00) and any additional amounts advanced pursuant to this Security Instrument and other Loan Documents, plus interest. Borrower has promised to pay this debt in regular monthly payments and to pay the debt in full not later than March 1, 2022 (the **"Maturity Date"**).

(G)   **"Property"** means the real property described in Exhibit A to this Security Instrument, and includes any improvements thereon.

   **This Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Security Instrument")** made February 4, 2021, among ELLIOT RAMOS AS AS TRUSTEE OF 409 CHISHOLM ST LAND TRUST, A FLORIDA TRUST DATED JANUARY 1, 2021 (the **"Borrower"**), as mortgagor, whose address is 284 Towerview Dr W, Haines City, FL 33844, and HIS CAPITAL FUNDING, a California corporation (together with its successors and assigns, collectively, the **"Lender"**), as mortgagee, whose address is 2151 Consulate Dr Ste 6, Orlando, FL 32801.

WITNESSETH

   THAT BORROWER IRREVOCABLY GRANTS, CONVEYS, BARGAINS, TRANSFERS AND ASSIGNS TO LENDER THAT PROPERTY IN MONTGOMERY COUNTY, AL, DESCRIBED AS:

See Legal Description attached as Exhibit A and incorporated herein by reference.

APN: 04-09-32-1-022-020.000

Street Address: 409 CHISHOLM ST, MONTGOMERY, AL 36110

   TOGETHER WITH the rents, issues and profits thereof, SUBJECT HOWEVER, to the right, power and authority given to and conferred upon Lender by the provisions set forth below to collect and apply such rents, issues and profits (collectively, the "Property"). For the Purpose of Securing: 1.   Performance of each agreement of Borrower incorporated by reference or contained herein. 2.   Payment of the indebtedness evidenced by a promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $34,500.00 executed by Borrower in favor of Lender. 3.   Payment of such further sums as the then record owner of the Property hereafter may borrow from Lender, when evidenced by another note (or notes) reciting it is so secured. 4.   All obligations under the Loan Agreement.

   A default under any other security instrument securing the above-referenced promissory note shall constitute a default under this Security Instrument as well.

To protect the security of this Security Instrument, Borrower agrees:

(1)     That Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and hypothecate the Property and that such Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record. Borrower further agrees that Borrower will observe and perform said provisions; and that the reference to the Property, obligations, and parties in said provisions shall be construed to refer to the Property, obligations and parties set forth in this Security Instrument.

(2)     To keep the Property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all applicable governmental regulations, ordinances, zoning and building laws, and any other applicable law affecting the Property or requiring any alterations or improvements to be made thereon, not to commit or permit waste thereof; not to commit, suffer or permit any act upon the Property in violations of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of the Property may be reasonably necessary, the specific enumerations herein not excluding the general. Additionally, the Borrower shall keep all licenses, permits, consents, and approvals (including certificates of occupancy) required by applicable law as it relates to Borrower's business operations or the Property. If the Borrower is an entity, the Borrower is and shall remain in good standing in each and every jurisdiction where the same is required by applicable law.

(3)     To provide, maintain and deliver to Lender fire insurance satisfactory to and with loss payable to Lender and Lender listed as additional insured, as more particularly set forth in this Security Instrument. The amount collected under any fire or other insurance policy may be applied by Lender upon any indebtedness secured herein and in such order as Lender may determine or at option of Lender the entire amount so collected or any part hereof may be released to Borrower. Such application or release shall not cure or waive any default or notice of default herein under or invalidate any act done pursuant to such notice.

(4)     To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of the Lender; and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Lender may appear, and in any suit brought by Lender to enforce this Security Instrument.

(5)     To not allow any additional liens (including but not limited to PACE or HERO liens) to attach to the Property, regardless if the liens are junior to this Security Instrument, unless Borrower obtains prior written consent from Lender. Borrower must provide Lender with an inter-creditor or subordination agreement satisfactory to Lender, in Lender's sole and absolute discretion.

(6)     To pay; at least ten (10) days before delinquency all taxes, dues, and assessments affecting the Property, including but not limited to, condominium, planned unit development, and association dues; assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on the Property or a part thereof, which appear to be prior or superior

hereto; all costs, fees and expenses of this Security Instrument.

Should Borrower fail to make any payment or to do any act as herein provided, then Lender, but without obligation to do and without notice to or demand upon Borrower and without releasing Borrower from any obligation hereof, may: make or do the same in such manner and to such extent as either may be deemed necessary to protect the security herein. Lender being authorized to enter upon the Property for such purposes; appear in and defend any action or preceding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(7)     To pay immediately and without demand all sums so expended by Lender, with interest from date of expenditure at the maximum amount allowed by law in effect at the date hereon, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Lender not to exceed the maximum allowed by law at the time when said statement is demanded.

(8)     That any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Lender, who may apply or release such monies received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(9)     That by accepting payment of any sum secured hereby after its due date, Lender does not waive his right either to require prompt payment when due of all other sums so secured or to declare a default for failure so to pay.

(10)     That at any time or from time to time, without liability therefore and without notice, upon written request of Lender and presentation of this Security Instrument and said Note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Lender may; release any part of the Property; consent to the making of any map or plat thereof; join in granting any easement therein; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(11)     That upon written request of Lender stating that all sums secured hereby have been paid, and upon surrender of this Security Instrument and said Note to Lender for cancellation and retention and upon payment of its fees, Lender shall release, without warranty, the Property held hereunder. The recitals in such RELEASE of any matters or facts shall be conclusive proof of the truthfulness thereof. The Lender in such release may be described as "The person or persons legally entitled thereto". Five years after issuance of such full RELEASE, Lender may destroy said Note and this Security Instrument (unless directed in such request to retain them).

(12)     That as additional security, Borrower hereby gives to and confers upon Lender the right, power and authority during the continuance of this Security Instrument, to collect the rents, issues and profits of the Property, reserving unto Borrower the right, prior to any default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable.

Upon any such default, Lender may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured enter upon and take possession of the Property or any part thereof, in its own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expense of operation and collection, including reasonable attorneys' fees, upon the indebtedness secured hereby, and in such order as Lender may determine. The entering upon and taking possession of the Property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(13)    That upon default by Borrower in payment of any indebtedness secured hereby or in performance of any agreement hereunder, under the Note secured hereby, or under the Loan Agreement, Lender may declare all sums secured hereby immediately due and payable by delivery to Lender of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Lender shall cause to be filed for record.

(14)    That this Security Instrument applies to, insures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Lender shall mean the owner and holder, including pledges of the note secured hereby whether or not named as Lender herein. In this Security Instrument, whenever the contest so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(15)    Borrower shall, at Borrower's expense, maintain in force fire and extended coverage insurance in any amount of not less than the full replacement value of any building which may exist on the Property, with loss payable to Lender. Borrower shall provide fire insurance protection on Borrower's furniture, fixtures and personal property on the Property in an amount equal to the full replacement value thereof, and promises that any insurance coverage in this regard will contain a waiver of the insurers' right of subrogation against Lender. In addition, Borrower shall, at Borrower's expense, maintain in force policies of liability insurance and, if applicable, flood insurance, with Lender as loss payee and as an additional insured thereunder, insuring Borrower against all claims resulting from the injury to or the death of any person or the damage to or the destruction of any property belonging to any person by reason of Lender's interest hereunder or the use and occupancy of the Property by Borrower. Such insurance shall be in the following amounts: (1) $300,000.00 combined single limit liability insurance covering property damage and bodily injury; and (2) flood insurance in an amount equal to the replacement cost of the Property is required if the collateral is located in a flood zone. At least thirty (30) days prior to the expiration of a policy, Borrower shall deliver to Lender a renewal policy in a form satisfactory to Lender. If Borrower obtains any other insurance on the Property, such insurance shall name the Lender as additional insured and loss payee thereunder. Additionally, if the Loan term is 360 months or longer, and the Property is located within twenty-five (25) miles of the coast of the Gulf of Mexico or the Atlantic coast of Florida, Georgia, South Carolina, or North Carolina, Borrower shall maintain coverage on the Property for windstorm and/or windstorm related perils and/or "named storms" issued, such coverage to be in form and substance satisfactory to Lender. For all Loans with a term of 360 months or longer, the Property shall also be covered by rent loss insurance that covers a period of not less than six (6) months. All such insurance policies required

hereunder (other than commercial liability policies) shall require at least ten (10) days' prior notice to the Lender of termination or cancellation arising because of nonpayment of a premium and at least thirty (30) days' prior notice to the Lender of termination or cancellation (or such lesser period, not less than ten (10) days, as may be required by Applicable Law) arising for any reason other than non-payment of a premium and no such notice has been received by the Seller.

(16)    If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person), or a lien or encumbrance is created upon the Property, voluntarily or involuntarily, or if Borrower shall file or have filed against it and/or the Property any proceeding for relief of debtors under the United States Bankruptcy Code, in each case without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than thirty (30) days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(17)    Lender may make or cause to be made reasonable entries upon and inspections of the Property securing this Security Instrument.

(18)    Borrower shall promptly notify Lender of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Property securing this Security Instrument or any part thereof and Borrower shall appear in and prosecute any such action or proceeding unless otherwise directed by Lender in writing. Borrower authorizes Lender, at Lender's option, as attorney-in-fact for Borrower, to commence, appear in and prosecute, in Lender's or Borrower's name, any action or proceeding relating to any condemnation or other taking of the Property, whether direct or indirect, and to settle or compromise any claim in connection with such condemnation or other taking. The proceeds of any award, payment or claim for damages, direct or consequential, in connection with any condemnation or other taking, whether direct or indirect, of the Property, or part thereof, or for conveyances in lieu of condemnation, are hereby assigned to and shall be paid to Lender. Borrower authorizes Lender to apply such awards, payments, proceeds or damages; after the deduction of Lender's expenses incurred in the collection of such amounts, at Lender's option, to restoration or repair of the Property or to payment of the sums secured by this Security Instrument, whether or not then due, in the order of application set forth in paragraph three (3) hereof, with the balance, if any, to Borrower. Unless Borrower and Lender otherwise agree in writing, any application of proceeds to Principal (as defined in the Note) shall not extend or postpone the due date of the monthly installments referred to in Section 3 of the Note or change the amount of such installments. Borrower agrees to execute such further evidence of assignment of any awards, proceeds, damages or claims arising in connection with such condemnation or taking as Lender may require.

(19)    This Security Instrument is intended to be a security agreement pursuant to the Uniform Commercial Code for any of the items specified above as part of the Property which,

under applicable law, may be subject to a security interest pursuant to the Uniform Commercial Code, and Borrower hereby grants Lender a security interest in said items. Borrower agrees that Lender may file this Security Instrument, or a reproduction thereof, in the real estate records or other appropriate index, as a financing statement for any of the items specified above as part of the Property. Any reproduction of this Security Instrument or of any other security agreement or financing statement shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, upon Lender's request, any financing statements, as well as extensions, renewals and amendments thereof, and reproductions of this Security Instrument in such form as Lender may require to perfect a security interest with respect to said items. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments and releases thereof, and shall pay all reasonable costs and expenses of any record searches for financing statements Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created pursuant to the Uniform Commercial Code any other security interest in said items, including replacements and additions thereto. For purposes of filing and recording this Security Instrument in, among other places, the real estate records of the county in which the Property is located, the following information is included: (i) the Borrower shall be deemed the "Debtor" with the address set forth for the Borrower on the first page of this Security Instrument which the Borrower certifies is accurate, (ii) the Lender shall be deemed to be the "Secured Party" with the address set forth for the Lender on the first page of this Security Instrument and shall have all of the rights of a secured party under the Uniform Commercial Code, (iii) this Security Instrument covers goods which are or are to become fixtures, (iv) the name of the record owner of the land is Borrower, (v) if Borrower is an entity, the organizational identification number of Borrower is , and the Borrower is organized under the laws of N/A. Upon Borrower's breach of any covenant, representation, warranty or agreement of Borrower contained in this Security Instrument, including the covenants to pay when due all sums secured by this Security Instrument, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in this Security Instrument as to such items. In exercising any of said remedies, Lender may proceed against the items of real property and any items of personal property specified above as part of the Property separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies under the Uniform Commercial Code or of the remedies provided in this Security Instrument.

(20) Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave intentionally or materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's use of the Property solely for business and/or commercial purposes.

(21) <u>State-Specific Provisions</u>. State specific provisions, if any, are outlined on Exhibit B attached hereto and incorporated herein. In the event of any inconsistencies between the terms and conditions of this Section and any other terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

(22) Indemnity. The Borrower agrees to indemnify Lender, each legal entity, if any who

controls the Lender and each of their respective directors, officers and employees (each an "Indemnified Party", collectively the "Indemnified Parties"), and to hold each Indemnified Party harmless from and against, any and all claims, damages, losses, liabilities and expenses (including all reasonable fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation and preparation therefor) which any Indemnified Party may incur or which may be asserted against any Indemnified Party by any person, entity or governmental authority (including any person or entity claiming derivatively on behalf of the Borrower), in connection with or arising out of the matters referred to in this Security Instrument or in the other Loan Documents, whether (a) arising from or incurred in connection with any breach of a representative, warranty or covenant by the Borrower, or (b) arising out of or resulting from any suit, action, claim, proceeding or governmental investigation, pending or threatened, whether based on statute, regulation or order, or tort, or contract or otherwise, before any court or governmental authority; provided, however, that the foregoing indemnity agreement shall not apply to any claims, damages, losses, liabilities and expenses solely attributable to an Indemnified Party's willful misconduct. The indemnity agreement contained in this Section shall survive the termination of this Security Instrument, payment of any Loan and assignment of any rights hereunder.

(23)    Wherever possible, each provision of this Security Instrument shall be interpreted in such manner as to be effective and valid pursuant to applicable law, but if any provision of this Security Instrument shall be prohibited by or invalid pursuant to applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Security Instrument.

(24)    In the event of any default under this Security Instrument or the obligation secured hereby, or if this Security Instrument becomes the subject of, or is involved in, any proceeding or action for any reason whatsoever, whether administrative hearing, arbitration, mediation, or civil, bankruptcy, or appellate litigation, the Lender shall recover its expenses, costs and reasonable attorneys' fees incurred in  such proceeding or action from the Borrower including, without limitation, all appellate and bankruptcy fees and all paralegal fees.

(25)    **WAIVER OF JURY TRIAL. THE BORROWER IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS SECURITY INSTRUMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS SECURITY INSTRUMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.  THE BORROWER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

[SIGNATURE PAGE FOLLOWS]

The undersigned Borrower requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him/her at his/her address hereinbefore set forth.

BORROWER:

_____(Seal)
ELLIOT RAMOS AS AS TRUSTEE OF 409
CHISHOLM ST LAND TRUST, A
FLORIDA TRUST DATED JANUARY 1,
2021

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF _Florida_ )
)   ss
COUNTY OF _Orange_ )

On _2/5/2021_, before me, _Javier Dueño_, a Notary Public,
personally appeared _Elliot Ramos_
(Insert name and title exactly as they appear on signature page)

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Florida_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**Javier Dueno**
**Comm. # GG910394**
**Expires: Sept. 4, 2023**
**Bonded Thru Aaron Notary**

_____
Notary Public

(Seal)

## MAIL TAX STATEMENTS AS DIRECTED ABOVE

Security Instrument
Loan ID: FL6106
Property Address: 409 CHISHOLM ST, MONTGOMERY, AL 36110

# EXHIBIT A

## DESCRIPTION OF PROPERTY

Lot 34, in Block F, according to the Map of Gardendale Estates Plat No. 1, as the same appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 12, at Page 138.

Exhibit A to Security Instrument - Page 1 of 1
Loan ID: FL6106
Property Address: 409 CHISHOLM ST, MONTGOMERY, AL 36110

## EXHIBIT B

## ALABAMA STATE SPECIFIC PROVISIONS

**Section 21.1**   Inconsistencies. In the event of any inconsistencies between the terms and conditions of this Section and the terms and conditions of this Security Instrument, the terms of this Section shall control and be binding.

**Section 21.2**   Attorneys' Fees; Costs of Enforcement and Property Preservation. In any action to enforce or to foreclose the lien of this Security Instrument, Lender shall be entitled to recover from Borrower its reasonable attorneys' and paralegals' fees, and all costs and expenses incurred, whether incurred in court-ordered mediation, at trial, on appeal, or in bankruptcy and administrative proceedings, and including but not limited to any costs for environmental reports, appraisals, property inspections and inspection reports, title searches and reports, surveys, and costs of a similar nature incurred by Lender for the Property.

**Section 21.3**   Future Advances. This Security Instrument is given to secure not only existing indebtedness, but also such future advances made pursuant to the Loan Documents, whether such advances are obligatory or are to be made at the option of the Lender, or otherwise.

**Section 21.4**   Power of Sale. If an event of default exists, this Security Instrument shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due security instruments, and the Lender shall be authorized, at its option, whether or not possession of the Property is taken, to sell the Property (or such part or parts thereof as the Lender may from time to time elect to sell) under the power of sale which is hereby given to the Lender, at public outcry, to the highest bidder for cash, at the front or main door of the courthouse of the county in which the land to be sold, or a substantial and material part thereof, is located, after first giving notice by publication once a week for three successive weeks of the time, place and terms of such sale, together with a description of the Property to be sold, by publication in some newspaper published in the county or counties in which the land to be sold is located. If there is land to be sold in more than one county, publication shall be made in all counties where the land to be sold is located, but if no newspaper is published in any such county, the notice shall be published in a newspaper published in an adjoining county for three successive weeks. The sale shall be held between the hours of 11:00 a.m. and 4:00 p.m. on the day designated for the exercise of the power of sale hereunder. The Lender may bid at any sale held under this Security Instrument and may purchase the Property, or any part thereof, if the highest bidder therefor. The purchaser at any such sale shall be under no obligation to see to the proper application of the purchase money. At any sale all or any part of the Property, real, personal or mixed, may be offered for sale in parcels or en masse for one total price, and the proceeds of any such sale en masse shall be accounted for in one account without distinction between the items included therein and without assigning to them any proportion of such proceeds, the Borrower hereby waiving the application of any doctrine of marshalling or like proceeding. In case the Lender, in the exercise of the power of sale herein given, elects to sell the Property in parts or parcels, sales thereof may be held from time to time, and the power of sale granted herein shall not be fully exercised until all of the Property not previously sold shall have been sold or all the obligations shall have been paid in full and this Security Instrument shall have been terminated as provided herein.

**Section 21.5**   Foreclosure Deeds.  To the extent permitted by applicable law, the Borrower hereby authorizes and empowers the Lender or the auctioneer at any foreclosure sale had hereunder, for and in the name of the Borrower, to execute and deliver to the purchaser or purchasers of any of the Property sold at foreclosure good and sufficient deeds of conveyance or bills of sale thereto.

**Section 21.6**   Multiple Sales.  If an event of default exists, the Lender shall have the option to proceed with foreclosure, either through the courts or by power of sale as provided for in this Security Instrument, but without declaring the whole obligations due.  Any such sale may be made subject to the unmatured part of the obligations, and such sale, if so made, shall not affect the unmatured part of the obligations, but as to such unmatured part of the obligations this Security Instrument shall remain in full force and effect as though no sale had been made under this Section. Several sales may be made hereunder without exhausting the right of sale for any remaining part of the obligations, whether then matured or unmatured, the purpose hereof being to provide for a foreclosure and sale of the Property for any matured part of the obligations without exhausting the power of foreclosure and the power to sell the Property for any other part of the obligations, whether matured at the time or subsequently maturing

**Section 21.7**   Waiver of Homestead.  Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**Section 21.8**   Choice of Law.  Alabama law shall exclusively govern the enforcement and interpretation of this Security Instrument.