# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | **Case No. 21-31333** |
| **JAMES D. BULGER,** ) | |
| ) | **Chapter 7** |
| Debtor. ) | |

## POST-TRIAL BRIEF

Comes now James D. Bulger (the "Debtor") and files this Post-Trial Brief (the "Brief") concerning the *Joinder in the Bankruptcy Administrator's Motion to Dismiss this Bankruptcy Case and Request for Issuance of an Injunction Against Refiling*, Docket No. 30 (the "Joinder") and the *Motion to Dismiss Bankruptcy Case with Prejudice Pursuant to 11 U.S.C. § 349(a) and Modification of Request for Injunction Against Refiling Bankruptcy*, Docket No. 65 (the "Amended Motion") filed by Pike Road Investments, LLC ("Pike Road") and John William Kitchens ("Kitchens" and together with Pike Road, collectively, the "Joining Parties") and the Debtor's *Objection to Motion to Dismiss Bankruptcy Case with Prejudice Pursuant to 11 U.S.C. § 349(a) and Modification of Request for Injunction Against Refiling Bankruptcy*, Docket No. 71 (the "Objection"). In further objection to the Joinder and the Amended Motion and in further support of the Objection, the Debtor states as follows:

**I.      The Court should overrule the Amended Motion because the Joining Parties did not make any allegations or requests concerning barring the Debtor's discharge of existing debts in the Joinder.**

In the Joinder, the Joining Parties moved for dismissal and – relying on §109(g)(1) – requested an injunction "prohibiting James D. Bulger from filing bankruptcy again for at least six months" Joinder, 8. The alleged grounds for requesting a six-month injunction was because the Debtor "filed this case in bad faith" (Joinder, ¶ 22), "made false statements and omissions in his

bankruptcy filings" (Joinder, 24), and "appears to have coordinated, through his associates, transfers of funds that may be property of the estate." Joinder, ¶ 25. The Joining Parties only mentioned §349(a) in passing, merely pointing out that some courts have used that section as grounds to impose a longer injunction; relief that the Joining Parties did not seek.

Section 349(a) provides for two potential effects of dismissal, stating,

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349(a). Courts have recognized that, while poorly drafted (*see In re Meltzer*, No. 19-21110-PRW, 2020 Bankr. LEXIS 80, at *15 (Bankr. W.D.N.Y. Jan. 10, 2020) ("The precise language and sentence structure used by Congress in 11 U.S.C. § 349(a) is untidy.")), the two clauses in section 349(a) address two distinct concerns. *In re Class A Props. Five*, LLC, 600 B.R. 27, 34 (Bankr. N.D. Ill. 2019); *In re Jones*, 192 B.R. 289, 290 (Bankr. M.D. Ga. 1996). The first clause bars future discharge of debts that were dischargeable in the dismissed case. *In re Class A Props. Five, LLC*, 600 B.R. at 34. The second clause prejudices the debtor by enjoining a subsequent petition. *Id*.

Because the two clauses in section 349 address different concerns and call for different sanctions, they also require different proof. *In re Singer*, 00-08620-6B3, 2001 Bankr. LEXIS 2044 (Bankr. M.D. Fla. Aug. 1, 2001). When considering the differences between the two clauses in section 349(a), the *Singer* court distinguished between bad faith that would generally support a dismissal, and bad faith that supports dismissal that bars future discharge of debts. *Id*. at *4-5. Speaking of the dismissal that declares that bars future discharge of debts, the court said that

"'[b]ad faith' as cause for this type of dismissal must rise to the level of egregious misconduct, contemptuousness, malfeasance or systemic abuse." *Id*. at 5. The proof required for a dismissal barring discharge is therefore egregious conduct; conduct that the Joining Parties failed to allege in the Joinder.

In the Joinder, the Joining Parties never mentioned or sought relief under the first clause in section 349(a) – barring discharge of existing debts. Indeed, the word "discharge" does not appear anywhere in the Joinder. In contrast, the Joinder is replete with allegations and requests concerning an injunction. Joinder, page 1 ("the Movants request that this Honorable Court issue against Bulger an injunction against re-filing bankruptcy of at least six months"); ¶21 ("Courts have generally held that three statutory bases exist for the imposition of an injunction against the re-filing of a bankruptcy case."); ¶22 ("Bulger's conduct in this case warrants an injunction against re-filing."); ¶22 ("an injunction against re-filing of at least six months is appropriate, and the Movants request that the Court issue such an injunction against Bulger."). The Joining Parties could have requested the Court to bar the discharge of existing debts, but did not.

Because the Joining Parties failed to request a bar to the discharge of existing debts in the Joinder, they may not make those arguments in the Amended Motion. *See In re Beinhauer*, 570 B.R. 128, 144 n.9 (Bankr. E.D.N.Y. 2017) ("The Court need not consider a new argument made for the first time in a reply brief."). In *Beinhauer*, the chapter 7 trustee moved to dismiss the debtor's bankruptcy case and requested that the court order debtor's attorney to reimburse the trustee for costs, including attorney's fees. *Id*. at 131. The debtor's attorney objected to the motion. *Id*. at 134. In reply to the attorney's objection, the trustee made new allegations and evidence. *Id*. The court stated that it would "not consider the Trustee's arguments . . . not addressed in the Motion and evidence of the account [that] was provided for the first time in the

3

reply. The Court need not consider a new argument made for the first time in a reply brief." *Id*. at 144, n.8. The court went on to reason that new arguments deny the opposing party an opportunity to properly respond to such arguments. *Id*. *See also In re Adamo*, No. 14-73640-las, 2016 Bankr. LEXIS 694, at *51 (Bankr. E.D.N.Y. Mar. 4, 2016) (stating with regard to new arguments not originally raised in a motion to dismiss that "[t]he Court need not consider a new argument made for the first time in a reply brief.").

Similarly in the present case the Joining Parties filed the Joinder and only requested an injunction against refiling. Subsequently the Court held a hearing on the Joinder where the Debtor objected to the Bankruptcy Administrator's original motion to dismiss and the Joinder. The Court set the matter for final hearing to give the parties time to conduct discovery and likewise entered a scheduling order for the identification of witnesses and exhibits. *See* Docket No. 57. Rather than initially making the section 349(a) arguments and requests for denial of discharge in the Joinder, the Joining Parties rather waited until after discovery was completed to make such arguments. Because the Joining Parties did not allege facts or arguments concerning baring discharge in the Joinder, but rather waited until the Debtor's opportunity to respond to such facts and arguments was past, the Court should overrule the Amended Motion.

  **II.** **The Court should overrule the Joinder and the Amended Motion because the Debtor did not file this case in bad faith.**

The Debtor commenced his bankruptcy case in good faith. Good faith is an implicit requirement when filing for bankruptcy protection. *Bunyan v. Remick*, No. 8:18-cv-1519-T-36, 2019 U.S. Dist. LEXIS 169985, at *7 (M.D. Fla. Oct. 1, 2019). A debtor's good faith or bad faith is a subjective determination that requires courts to apply a totality of the circumstances test. *In re Singer*, No. 00-08620-6B3, 2001 Bankr. LEXIS 2044, at *5 (Bankr. M.D. Fla. Aug. 1, 2001).

4

Courts eschew a formulaic recitation of factors when determining a debtor's good faith, and rather focus on whether the debtor abused the provisions, purpose or spirit of the bankruptcy code. *In re Piazza*, 719 F.3d 1253, 1272 (11th Cir. 2013) (citations omitted); *In re Russell*, No. 12-80537-WRS, 2012 Bankr. LEXIS 5474, at *8 (Bankr. M.D. Ala. Nov. 27, 2012). The end-goal of the totality of the circumstances test is a finding of whether the debtor acted in good faith and whether the debtor unduly prejudiced creditors in filing the bankruptcy case. *In re Singer*, 2001 Bankr. LEXIS 2044, at *8; *In re Sullivan*, No. 11-03291, 2011 Bankr. LEXIS 5207, at *11 (Bankr. S.D. Ala. Dec. 12, 2011). Because of the subjective nature of the bad faith determination and the Court's broad discretion, "the court should step cautiously when asked to exercise the power to deny a debtor access to its jurisdiction." *In re Kane & Kane*, 406 B.R. 163, 167 (Bankr. S.D. Fla. 2009).

Here, the Debtor had legitimate reasons for seeking bankruptcy relief. First, the Debtor needed a fresh start from his creditors, including the Joining Creditors. For the approximate three months prior to August 5, 2021 (the "Petition Date"), the Debtor had been unable to effectively work because of his health condition and because of the *Consent Order on Petition for Preliminary Injunction* (the "State Court Preliminary Injunction Order") (DR8) entered by the Circuit Court of Autauga County, Alabama (the "State Court"). During that time the Debtor had other obligations to creditors and had incurred additional debts related his healthcare. The central purpose of the Bankruptcy Code is to provide a procedure whereby insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy new opportunity in life with clear field for future effort, unhampered by pressure and discouragement of preexisting debt. *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (*citing Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). Here, the Debtor was seeking this relief.

5

Furthermore, the Debtor was concerned – given the pattern and progress in the case before the State Court (the "State Court Case") – that his creditors other than the Joinder Parties would not receive an equitable share of his assets if the State Court Case continued. When filing for bankruptcy protection, particularly pursuant to chapter 7, a debtor surrenders his assets to the trustee for the trustee to distribute equitably among all the debtor's creditors. *In re Uche*, 555 B.R. 57, 62 (Bankr. M.D. Fla. 2016) (Jackson, J) ("where a debtor has insufficient funds to meet his obligations, this is an obvious reason to file a Chapter 7 petition. A Chapter 7 petition is, to a great extent, equivalent to throwing oneself on the mercy of the bankruptcy court: The debtor is surrendering to his or her creditors. The estate is then collected and distributed to all creditors in a fair and equitable manner, consistent with the Bankruptcy Code. Indeed, under some circumstances, dismissal of a Chapter 7 case would only serve to favor some creditors over others."). The Debtor has surrendered his assets for equitable distribution to all of his creditors, rather than allow a single creditor to obtain satisfaction.

Similarly, filing for bankruptcy in the face of litigation is not bad faith. "Almost every bankruptcy case is filed because a creditor is pursuing a debtor, whether it be calls from debt collectors, repossessions, suits on unsecured debt, or residential foreclosures. Indeed, if filing bankruptcy to avoid the payment of a debt was cause for dismissal, no debtor would ever be able file a bankruptcy case." *In re Uche*, 555 B.R. 57, 62 (Bankr. M.D. Fla. 2016) (internal citation omitted). Obviously the State Court Case was a factor in the Debtor's decision to commence this case. But while the Debtor filed bankruptcy when the State Court was considering the Joining Parties' a *Motion for the Sale of Properties* (the "State Court Sale Motion") (DR9) and *Motion to Compel and for Sanctions* (the "State Court Sanction Motion") (DR10), such motions sought interim relief in the course of the State Court Case, and the State Court Case was far from being

resolved. Even so, this factor is the "least compelling" when considering whether a case is filed in bad faith. *In re Freeman*, No. 16-11756-DHW, 2017 Bankr. LEXIS 1322, at *32 (Bankr. M.D. Ala. May 11, 2017) (Williams, J).

### A. The Debtor's pre-petition activities do not evidence bad faith.

The Debtor undoubtedly closed businesses that he owned prior to the Petition Date. However, the Debtor had valid reasons for doing so given his health conditions. Even if the Debtor's closure of his businesses and the formation of other similar businesses could constitute a transfer of the Debtor's assets, the chapter 7 trustee is well-positioned to bring such claims. Therefore, any such alleged transfer is not a significant consideration on a motion to dismiss. *In re Marino*, Nos. 3:14-bk-809-PMG, 3:14-ap-211-PMG, 2014 Bankr. LEXIS 5510, at *7-8 (Bankr. M.D. Fla. Nov. 19, 2014) ("When analyzing whether a Chapter 7 debtor is guilty of bad faith constituting cause for dismissal under § 707(a), *the court should not consider conduct that is redressed by other portions of the Bankruptcy Code*.") (emphasis added).

### B. The Debtor's alleged omissions do not evidence bad faith.

The Debtor conceded that he had not correctly disclosed all of his assets; specifically, the Debtor's investment in a business in Mexico (the "Mexico Business"). Inaccuracies or omissions in a debtor's schedules can serve as evidence of bad faith, but the degree of those inaccuracies and the intent behind them determines whether bad faith is present. *In re Sullivan*, No. 11-03291, 2011 Bankr. LEXIS 5207, at *9 (Bankr. S.D. Ala. Dec. 12, 2011). Ultimately, the appropriateness of a post-dismissal injunction comes down to the severity of the conduct at issue. *Id* at *8. Here, the Debtor disclosed ownership of 4 scooters in Mexico. While this disclosure is not accurate, it does disclose assets related to the Mexico Business and is easily corrected and sufficient to put the

7

chapter 7 trustee on notice of assets related to the Mexico Business. *In re Strauss*, No. 1:16-CV-3490-SCJ, 2017 U.S. Dist. LEXIS 199550, at *9 (N.D. Ga. June 15, 2017) (finding on appeal that "the Bankruptcy Court was clearly erroneous in finding lack of good faith/bad faith, as the evidence at the August 2016 hearing (specifically Appellant's testimony) did not show a deliberate omission of the claim by Appellant that constituted a misuse or abuse of the provisions, purpose, or spirit of the Bankruptcy Code."). Furthermore, the Debtor testified that he was not attempting to hide the Mexico Business when he disclosed the 4 scooters.

Even if the Debtor's omission had been material, "the specific remedy provided by the Bankruptcy Code for filing false or fraudulent schedules is the denial of the debtor's discharge under § 727(a)(4)" rather than dismissal. *In re Marino*, Nos. 3:14-bk-809-PMG, 3:14-ap-211-PMG, 2014 Bankr. LEXIS 5510, at *8 (Bankr. M.D. Fla. Nov. 19, 2014).

The Joining Parties discussed other omissions, but failed to present evidence concerning the Debtor's actual ownership of assets related to those omissions. Specifically, while the Joining Parties presented Alabama Secretary of State records concerning the formation of Jimmy James D. Bulger, LLC (CR30) ("Bulger LLC") and Renaissance Builders, LLC (CR31) ("Renaissance Bulders"), such records are not sufficient to establish an ownership interest. Alabama law provides that a certificate of formation is a notice filing only and does not establish substantive rights. *See* Ala. Code § 10A-5A-201(c) cmt. ("This Section changes the certificate of formation from one of providing certain substantive provisions to a notice filing. No substantive provisions are contemplated to be in the certificate, rather all such provisions are to be provided for in the limited liability company agreement."). Thus, the only evidence of the ownership of Bulger LLC and Renaissance Builders was the operating agreements for such companies. *See* DR1; DR2. The

Debtor did not have an ownership interest in those entities and therefore had no obligation to disclose anything in regard to those entities.

Similarly, the Joining Parties' allegations concerning undisclosed checks from C-Squared Automotive Performance, LLC ("C-Squared") are unavailing. The Debtor disclosed his interest in C-Squared. DR22, page 19. The chapter 7 trustee accrues to any right to undistributed funds from the company that are due to the Debtor. *See generally* Ala. Code § 10A-5A-502(b) ("A transferee has the right to receive, in accordance with the transfer, distributions to which the transferor would otherwise be entitled."). As such, if there are funds to be distributed from C-Squared, the Trustee will receive such funds.

The Joining Parties' allegations concerning the Debtor's failure to disclose beneficiary interests in various trusts (the "Montgomery Property Trusts") established to hold title to certain real properties located in Montgomery, Alabama (collectively, the "Montgomery Properties") likewise fail. Florida Home Buy, LLC ("Florida Home Buy") executed that certain *Assignment* dated January 18, 2021 (the "Montgomery Property Assignment") (DR12), whereby Florida Home Buy assigned its rights under the various *Alabama Residential Purchase Agreements* (collectively, the "Purchase Agreements") to various trustees (the "Montgomery Property Trustees") of various trusts established to hold title to the Montgomery Properties (the "Montgomery Property Trusts"). Pursuant to the Montgomery Property Assignment, Florida Home Buy instructed the Debtor to "complete the contractual obligations, which would otherwise be owed to [Florida Home Buy] but which have been transferred as indicated herein, with the [Montgomery Property Trustees]." DR12. Florida Home Buy caused the Debtor to convey the Montgomery Properties to the Montgomery Property Trusts. DR12. The Debtor is not a beneficiary of the Montgomery Property Trusts and therefore has no disclosure obligation with regard to the Montgomery Property Trusts.

9

### C. The Debtor's post-petition conduct does not indicate bad faith.

Post-petition, the Debtor had multiple settlement negotiations with the Joining Parties and had several conversations with his friends concerning potential assistance in effectuating his obligations under those potential settlements. However, settlement discussions are not indicative of bad faith. *Janvey v. Romero*, 883 F.3d 406, 415 (4th Cir. 2018) ("But we find groundless the notion that Romero's attempts to settle with a judgment creditor constitute cause to dismiss his case. The law encourages voluntary settlement of disputes. Settlement yields both private and public benefits. It spares the parties substantial costs in terms of time and money, and it lightens the docket of a resource-strapped judicial system.") (internal citations omitted). The Debtor was not exhibiting bad faith when he was attempting to negotiate a settlement with the Joining Parties. Furthermore, while the Debtor discussed potential transfers of estate property, if he was able to obtain a settlement with the Joining Parties and dismiss this bankruptcy case, the Debtor never actually transferred any estate assets.

Finally, while the Debtor received some proceeds of estate assets since the Petition Date – specifically the $17,550 in cash from C-Squared, the post-petition payments from Chacodon Mathews ("Mathews") pursuant to that certain *Real Estate* agreement (the "Mathews Agreement"), and the Mexico Business – the Debtor is prepared to surrender such assets to the chapter 7 trustee for distribution the Debtor's creditors.

### D. Because the Debtor did not have bad faith when filing this bankruptcy case, dismissal with an injunction is not warranted.

The Debtor has conceded – and the Court has already determined – that the Debtor's case should be dismissed pursuant to section 109(h). However, the Court should not take the further step of dismissing the Debtor's case for bad faith under section 349(a) and enjoining a subsequent

10

filing. Enjoining a subsequent case is an exercise of the Court's contempt power. *In re Faulkner*, 187 B.R. 1019, 1023 (Bankr. S.D. Ga. 1995). Such a dismissal is a severe sanction to which courts should resort only infrequently. *Id*.

In the present case, the Debtor has not abused the bankruptcy system or process. The Debtor has not filed multiple cases to thwart his creditors. *See generally In re Oliver*, 323 B.R. 774 (Bankr. M.D. Ala. 2005) (imposing a two year injunction for repeat filing). The Debtor has not refused to comply with the Court's orders. *See generally In re Singer*, 00-08620-6B3, 2001 Bankr. LEXIS 2044 (Bankr. M.D. Fla. Aug. 1, 2001) (sanctioning a debtor for, among other things, failing to comply with court orders). To the contrary, the Debtor is surrendering all of his non-exempt assets to the chapter 7 trustee for liquidation and equitable distribution to the Debtor's creditors.

### E. Because the Debtor did not have bad faith when filing this bankruptcy case, dismissal and barring discharge of existing debts is not warranted.

Barring of a debtor's discharge under § 349(a) is the "capital punishment of bankruptcy," "a severe sanction warranted only by egregious conduct." *Colonial Auto Center v. Tomlin (In re Tomlin)*, 105 F.3d 933, 937 (4th Cir. 1997). Because of the severity of this sanction, courts have insisted that debtors be afforded "a full opportunity for hearing consistent with consideration associated with a complaint to deny discharge under § 727." *In re Duran v. Rojas*, 630 B.R. 797, 811 (B.A.P. 9th Cir. 2021). Or as one court explained the matter, a motion to dismiss with a determination that debts are nondischargeable is not "§ 727 lite." *In re Bushyhead*, 525 B.R. 136, 152 (Bankr. N.D. Okla. 2015). Accordingly, courts resort to this sanction infrequently. *In re Guebert*, 07-41165, 2008 Bankr. LEXIS 1093 at *21 (Bankr. Kan. April 11, 2008). In the present case, the Debtor's conduct is not bad faith, and is certainly not egregious. I*n re Oliver*, 323 B.R.

774 (Bankr. M.D. Ala. 2005) (finding that a debtor's bad faith was not sufficient to bar the debtor's discharge).

## Conclusion

The Debtor did not file this case in bad faith.  The Joining Parties erected a massive house of cards consisting of allegations of hidden trusts, secret businesses, undisclosed claims, uncashed checks, and other nefarious activities.  Fortunately for the Debtor, those allegations proved false.  The Joining Creditors were not able to carry their evidentiary burden and the house of cards has collapsed.  The Court should therefore overrule the Joinder and the Amended Motion, and allow the chapter 7 trustee to administer the Debtor's estate for the benefit of all creditors.

*/s/ Bill D. Bensinger*
Bill D. Bensinger
Attorney for James D. Bulger

OF COUNSEL:

CHRISTIAN & SMALL LLP
1500 Financial Center
505 North 20th Street
Birmingham, Alabama 35203
Tel:  205-250-6626
Email:  bdbensinger@csattorneys.com

## CERTIFICATE OF SERVICE

       I hereby certify that on December 8, 2021 a copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF System which sends notification of such filing to counsel of record in this cause, and those not registered with CM/ECF for electronic notification have been served at their regular mailing address via email or U.S. Mail, postage prepaid, as follows:

United States Bankruptcy Administrator
Frank M. Johnson, Jr
Federal Building & U.S. Courthouse
One Church Street
Montgomery AL 36104

Von G. Memory
Wm. Wesley Causby
MEMORY MEMORY & CAUSBY, LLP
P.O. Box 4054
Montgomery, Alabama 36103

Garrick L. Stotser
Massey, Stotser & Nichols, PC
1780 Gadsden Highway
Birmingham, Alabama 35235

Jim T. Norman, III
Law offices of Jim T. Norman, III, LLC
872 Gillespie Street
Prattville, Alabama 36067

Carly Wilkins
Chapter 7 Trustee
Carly B. Wilkins, P.C.
560 S. McDonough St.; Suite A
Montgomery, Alabama 36104

                                          */s/ Bill D. Bensinger*
                                          Bill D. Bensinger

13

Case 21-31333    Doc 77    Filed 12/08/21    Entered 12/08/21 16:34:33    Desc Main
Document    Page 13 of 13