**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

In re                                              Case No. 21-31333-BPC
                                                   Chapter 7
JAMES D. BULGER,

    Debtor.

**MEMORANDUM OPINION AND ORDER DISMISSING CASE WITH INJUNCTION**

Debtor is faced with dismissal motions by multiple parties. The Bankruptcy Administrator lodged the first motion seeking dismissal based on Debtor's failure to complete pre-petition credit counseling. (Doc. 20). John Williams Kitchens and Pike Road Investments, LLC (the "Kitchens Creditors") joined in the Bankruptcy Administrator's motion but also independently raised issues beyond Debtor's non-compliance with 11 U.S.C. § 109. Specifically, the Kitchens Creditors allege bad faith and request an injunction of at least six months. After discovery, Creditors supplemented their joinder motion and expanded their request. (Doc. 65). The Kitchens Creditors now ask that Debtor's case be dismissed with prejudice pursuant to 11 U.S.C. § 349(a) and that Debtor be enjoined from refiling bankruptcy for at least two years. Debtor objected to this motion for its timing, among other reasons. The Court held an evidentiary hearing on November 30, 2021. After the hearing, the parties were allowed seven days to submit post-trial briefs. For the reasons set forth below, Debtor's case is due to be dismissed with a two-year injunction.

**I.**     **JURISDICTION**

This Court has jurisdiction to hear these matters pursuant to 28 U.S.C. § 1334(b). This is core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). This is a final order.

1

## II. FACTS

Before Debtor filed the instant Chapter 7 petition, he was a defendant in a state court action. Most of the facts below are undisputed facts and were set forth in the Joint Stipulation (Doc. 72) provided by the parties prior to the evidentiary hearing:

Pike Road Investments, LLC, Kitchens Investments, LLC, John W. Kitchens Adventures, LLC, Pike Manor, Ltd., John William Kitchens, William Bradford Kitchens, John Mark Kitchens, and Caroline Kitchens (collectively, the "Plaintiffs") filed suit against Debtor in the Circuit Court of Autauga County, Alabama, on April 29, 2021, Case Number CV-2021-900069 (the "State Court Case"). (Doc. 72). The next day, the State Court issued a temporary restraining order against Debtor. *Id.* Debtor filed a counterclaim against Pike Manor Ltd., John William Kitchens, William Bradford Kitchens, and John Mark Kitchens, as well as a third-party complaint against Jessie Love, All About Construction, LLC, and U Nailed It Construction, LLC on May 26, 2021. *Id.* On July 6, 2021, the State Court issued a consent order on the Plaintiffs' petition for preliminary injunction.

On July 29, 2021, Plaintiffs moved to hold Debtor in civil and criminal contempt and requested sanctions. The State Court scheduled a hearing on the Plaintiffs' contempt motion for August 5, 2021 at 9:00 a.m. On August 5, 2021, at 11:32 a.m., prior to the State Court's contempt hearing, Debtor filed a Chapter 7 petition initiating the above-referenced bankruptcy case. (Doc. 1). Debtor did not obtain credit counseling prior to filing his petition. On August 5, 2021, the State Court moved forward with the contempt hearing, found Debtor in criminal contempt, sanctioned Debtor $5,000.00 to reimburse the Plaintiffs' attorneys' fees and costs, and sentenced Debtor to forty days in jail.

On September 9, 2021, Plaintiffs amended their complaint to add Ricky Adams ("Adams"), Greg Schmitt ("Schmitt"), and Lonnie Marshall as defendants in the State Court Case. On

September 17, 2021, Debtor amended his petition, Schedules, and Statement of Financial Affairs. (Doc. 13). Debtor also filed a certificate of credit counseling reflecting that he completed credit counseling on September 15, 2021. (Doc. 14). In response, the Bankruptcy Administrator moved to dismiss Debtor's bankruptcy case. (Doc. 20).

While the Motion to Dismiss the instant bankruptcy case was pending, Debtor, Adams, and Schmitt removed the State Court Case to this Court on October 11, 2021, Adversary Proceeding 21-03023. (Doc. 25; AP Doc. 1). Debtor objected to the Motion to Dismiss. (Doc. 29). On October 24, 2021, the Kitchens Creditors joined in the Bankruptcy Administrator's Motion and requested an injunction of at least six months. (Doc. 30). After an initial hearing was held on October 26, 2021, the Court scheduled both motions for an evidentiary hearing. Prior to the evidentiary hearing, the Kitchens Creditors filed a new Motion to Dismiss expanding their request to include a § 349 bar and an injunction of at least two years. (Doc. 65). Debtor objected alleging insufficient notice and argued that the Kitchens Creditors had failed to timely request any relief under § 349(a). (Doc. 71).

### III. LEGAL ANALYSIS AND CONCLUSIONS OF LAW

**A.  Failure to complete pre-petition credit counseling warrants dismissal pursuant to 11 U.S.C. § 109(h).**

As stated in open court, Debtor's case is due to be dismissed pursuant to § 109(h) based on his failure to complete pre-petition credit counseling. Section 109(h) states that "an individual may not be a debtor under this title unless such individual has, during the 180-day period ending on the date of filing of the petition by such individual, received from an approved nonprofit budget and credit counseling agency described in [§] 111(a) an individual or group briefing." 11 U.S.C. § 109(h). *See In re Sussman*, 816 F. App'x 410, 415 (11th Cir. 2020) ("An individual may not be

3

a debtor in bankruptcy court unless that individual has received credit counseling from a nonprofit budget and credit counseling agency."); *In re Echeverry*, 720 F. App'x 598, 601, fn1 (11th Cir. 2018). Debtor did not dispute that he failed to complete the counseling pre-petition. Failure to complete prepetition counseling renders one ineligible to be a debtor and demands dismissal. *In re Wood*, 2013 WL 1969303, at *1 (Bankr. S.D. Ga. May 13, 2013) (finding debtor ineligible based on failure to receive pre-petition counseling and dismissing case); *In re Coley*, 2009 WL 2030435, at *1 (Bankr. M.D. Ala. July 6, 2009) ("The [§ 109(h)] requirement is mandatory, and the case must be dismissed.").

**B. Bad faith warrants a dismissal for cause with an injunction pursuant to §§ 707(a) and 349(a).**

The Eleventh Circuit has held that pre-petition bad faith "unquestionably constitutes adequate or sufficient reason to dismiss a Chapter 7 petition" under 11 U.S.C. § 707(a). *In re Piazza*, 719 F.3d 1253, 1271 (11th Cir. 2013). Although the Eleventh Circuit did not adopt the fifteen "*Baird* factors" in *In re Piazza*, it held that a totality-of-the-circumstances inquiry is appropriate for determining bad faith under § 707(a). *Id*. at 1272; *In re Baird*, 456 B.R. 112 (Bankr. M.D. Fla. 2010), *aff'd*, 2010 WL 11626728 (M.D. Fla. Nov. 10, 2010).[1] Essentially, a bankruptcy

---

[1] The fifteen *Baird* factors are as follows:

    (i) the debtor reduced his creditors to a single creditor shortly before the petition date;
    (ii) the debtor made no life-style adjustments or continued living a lavish life-style;
    (iii) the debtor filed the case in response to a judgment, pending litigation, or collection action;
    (iv) there is an intent to avoid a large, single debt;
    (v) the debtor made no effort to repay his debts;
    (vi) the unfairness of the use of Chapter 7;
    (vii) the debtor has sufficient resources to pay his debts;
    (viii) the debtor is paying debts of insiders;
    (ix) the schedules inflate expenses to disguise financial well-being;
    (x) the debtor transferred assets;
    (xi) the debtor is over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of creditors;
    (xii) the debtor employed a deliberate and persistent pattern of evading a single major creditor;
    (xiii) the debtor failed to make candid and full disclosure;

4

Case 21-31333    Doc 80    Filed 12/17/21    Entered 12/17/21 16:38:50    Desc Main
Document    Page 4 of 17

court asks: "whether the petition was filed with the intent and desire to obtain the relief that is available under [Chapter 7], through the means that Congress has specified, or whether the debtor is pursuing some other goal." *In re Boca Vill. Ass'n, Inc.*, 422 B.R. 318, 324 (Bankr. S.D. Fla. 2009) (citing *In re Kane & Kane*, 406 B.R. 163, 168 (Bankr. S.D. Fla. 2009)).

The Kitchens Creditors ask this Court to go beyond dismissal of the instant Chapter 7 case and request sanctions including dismissal with prejudice pursuant to § 349(a) and an injunction on refiling. (Docs. 30; 65). The Kitchens Creditors argue that more than outright dismissal is necessary here because, in addition to Debtor's failure to complete the pre-petition credit counseling, Debtor's alleged bad faith and impropriety (including pre-petition transfers, false statements and omissions on petition and schedules, and post-petition transfers) warrant harsher consequences.

Sections 105(a), 109(g), and 349(a) enable bankruptcy courts to impose sanctions upon a finding of "cause" which includes bad faith.[2] *In re Tomlin*, 105 F.3d 933, 938 (4th Cir. 1997) ("[T]he Bankruptcy Code provides a bankruptcy court with authority both to bar subsequent discharge of existing debt and to bar successive petitions under § 109(g)."); *In re Sullivan*, No. 11-03291, 2011 WL 6148709, at *3 (Bankr. S.D. Ala. Dec. 12, 2011) (stating that § 349(a) in conjunction with the inherent powers of § 105(a) allow bankruptcy courts to "address abuses to

---

> (xiv) the debtor's debts are modest in relation to his assets and income; and
> (xv) there are multiple bankruptcy filings or other procedural "gymnastics."

*In re Baird*, 456 B.R. at 116–17.

[2] Section 349(a) provides:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

11 U.S.C. § 349.

5

the system, egregious conduct, or bad faith by dismissing a debtor's case and imposing an injunction against future bankruptcy filings that meets or exceeds the 180 day period detailed in § 109(g)."); *In re Parson*, No. 21-30982, 2021 WL 4483124, at *9 (Bankr. N.D. Tex. Sept. 30, 2021) ("If cause exists to dismiss a Chapter [7] case, bankruptcy courts have discretion to bar refiling via a dismissal with prejudice.").

Once cause is determined, the severity of the sanction is within the bankruptcy court's discretion. *In re Weaver*, 222 B.R. 521, 522 (Bankr. E.D. Va. 1998) (citing *In re Tomlin,* 105 F.3d at 937) ("§ 349(a) gives a bankruptcy judge discretion to 'order otherwise' for cause and to dismiss a petition with prejudice; this discretion may be exercised either to prohibit the filing of a petition within a set time, or it may preclude the debtor from receiving a discharge in bankruptcy of debts in existence when the case is dismissed."); *In re Parson*, 2021 WL 4483124, at *9 (Bankr. N.D. Tex. Sept. 30, 2021) ("[T]he length of time for which [a] debtor is barred from refiling is committed to the discretion of the bankruptcy court."); see *In re Stockwell*, 579 B.R. 367, 373 (Bankr. E.D.N.C. 2017) (dismissing Chapter 7 for cause with one-year injunction); *In re Smith*, 536 B.R. 478, 481 (Bankr. M.D. Ala. 2015) (dismissing Chapter 13 petition with five-year injunction); *see In re Mitchell*, 357 B.R. 142, 158 (Bankr. C.D. Cal. 2006) (finding that "filing one Chapter 7 petition in bad faith is sufficient 'cause' under 11 U.S.C. § 349 to impose a 180–day bar against refiling another Chapter 7 petition.").

Because the extent of sanctions is discretionary once cause is established, the Court does not find Debtor's argument that he lacked notice of the Kitchens Creditors' § 349 request compelling. Debtor cites case law where courts abide by the general rule of not allowing parties to assert new claims in reply briefs. Such cases are distinguishable both factually and procedurally from this case—the Kitchens Creditors' motion was not a reply brief. Debtor was aware and had

6

sufficient notice that dismissal for cause with an injunction was being sought based on allegations of bad faith raised in the initial joinder motion that was filed over a month prior to the evidentiary hearing. Under § 105, a court has discretion to impose an injunction beyond 180-days prescribed by § 109. *See In re Sullivan*, 2011 WL 6148709, at \*3. Moreover, the initial joinder motion requested an injunction of "at least six months" and cited case law in support of their statement that "§§ 105(a) and 349(a) have been used as grounds to impose longer injunctions in appropriate circumstances." *Id*. While the initial motion did not expressly request that Debtor be barred from discharging all currently existing debts, he had a week to respond to the supplemental motion prior to the hearing and the Court afforded an additional seven days post-trial to brief the issue. Debtor was clearly on notice that § 349(a), as well as the consequences thereof, were at play. The Court finds ample notice, opportunity to respond, and a hearing were provided.

Having established notice was sufficient, it still stands that § 349(a) sanctions are reserved for cases involving egregious conduct. *In re Tomlin*, 105 F.3d at 937 ("[A] permanent bar to discharge is at times referred to as the 'capital punishment of bankruptcy,' for it 'removes much of the benefit' of the bankruptcy system.") (quoting *In re Merrill*, 192 B.R. 245, 253 (Bankr. D. Colo. 1995)). As movants, the Kitchens Creditors have the initial burden of establishing cause. *In re Piazza*, 719 F.3d 1253, 1266 (11th Cir. 2013). Yet, where Debtor's good faith is questioned, the burden shifts to Debtor to prove his good faith. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000); *In re Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991) (citing *In re Bingham*, 68 B.R. 933 (Bankr. M.D. Pa. 1987)). The Court must then decide "whether the petitioner has abused the provisions, purpose, or spirit of bankruptcy law". *In re Tamecki*, 229 F.3d at 207. Application of the *Baird* factors, discussed below, establishes that Debtor filed his Chapter 7 petition in bad faith and dismissal for cause with an injunction is appropriate.

7

Debtor's primary creditors are those seeking dismissal. While they are not the only two creditors, the Kitchens Creditors are owed significantly more than all other creditors combined. According to Debtor's schedules, he estimates the debt owed to the Kitchens Creditors is over ten million dollars whereas the next largest debt is approximately $200,000. (DR Ex. 23).

Debtor testified that he sought bankruptcy relief to stall the State Court Case and leverage a settlement. Debtor, Adams, and Schmitt then removed that litigation to this Court. Debtor made obvious his intent to avoid the pending litigation as well as the large debt to the Kitchens Creditors being sought in State Court, which exceeds all of his other debts combined. Debtor relies on *Janvey v. Romero* for the proposition that settlement discussions are not indicative of bad faith. 883 F.3d 406 (4th Cir. 2018). The Court agrees that attempts to settle do not constitute cause for dismissal—no one factor does since the Court must view the totality-of-the-circumstances. The Court further recognizes that it is not uncommon to file a bankruptcy petition to seek refuge from a current or impending judgment. *See In re Geddes*, 2012 WL 6091407, at *9 (Bankr. N.D. Ala. Dec. 7, 2012) (finding that "the evidence indicates that although Debtor did file this bankruptcy petition to avoid a judgment being entered against him in the District Court action, such filing was not done maliciously or in bad faith.").

While the court in *Janvey v. Romero* found that the debtor ("Romero") was an honest but unfortunate debtor worthy of a fresh start, that is not the case here. Despite filing bankruptcy to address a judgment, Romero also "faced the inability to earn a living, his wife's illness and care needs, the pending termination of two disability policies, and aggressive and costly litigation tactics." *Janvey v. Romero*, 883 F.3d at 410. Unlike Romero, Debtor works as an advisor for businesses allegedly owned by Adams and Schmitt, he receives income from C-Squared and for rent/mortgage on property, he has *at least* one undisclosed business (Mexico scooter business),

8

and he has no dependents. At the hearing, Debtor expressed frustration with the State Court judge and outcomes in that case. Debtor's testimony that he was excited about the State Court Case being in federal court, the timing of his petition, and the removal of the State Court Case to this Court indicate not only more stall tactics, but forum shopping. Specifically, Debtor admitted that he filed his petition in attempt to leverage a settlement and even testified that he thought this Court would be fair and the Kitchen Creditors would "be crazy not to settle". This is not merely a legal strategy. This is Debtor taking advantage of this Court's jurisdiction contrary to the purposes of Chapter 7. *See In re Kane & Kane*, 406 B.R. at 168.

Further, Debtor's circumstances and intent are clearly distinguishable from the case of *Janvey v. Romero*, and unlike Romero, who had no income and extensive medical costs and needs for his wife, Debtor's "settlement attempts" are a thinly veiled excuse to escape the State Court Case. While his post-trial brief asserts that health issues and hospital bills were also a precipitating factor to filing bankruptcy, there was no evidence provided regarding the extent of Debtor's medical bills or length of any hospital stay. There are some medical creditors reflected on his Schedules, however, the total amount of those claims is minuscule compared to his other debts. (DR Ex. 23). Moreover, Debtor's Statement of Financial Affairs reflects that, even with medical bills and a hospital stay, Debtor was able to make a payment in the amount of $29,766.05 to Guardian Credit Union just days prior to filing his petition. *Id*. Unlike Romero, Debtor has income, doesn't have dependents, and has associates that testified at the hearing they would just give him money or transfer assets to him upon request. Debtor is not genuinely seeking a fresh start, but deliberately and persistently evading the Kitchens Creditors. In doing so, Debtor is also over-utilizing the protections of the Bankruptcy Code to the unconscionable detriment of all of his creditors.

Moreover, nothing in Debtor's testimony revealed that he made any lifestyle adjustments to avoid or prevent bankruptcy. There was not direct testimony or argument as to a "lavish" lifestyle; yet the Court suspects his lifestyle is beyond average since, in addition to the large car payment made days before his filing, there was testimony as to Debtor's loss of seven million dollars in cash. However, this "loss" was not reported to authorities, nor was it disclosed as a loss related to theft or "other disaster" on Debtor's Statement of Financial Affairs. (Doc. 14). While a substantial loss may lead a person or business to file bankruptcy, here, Debtor did not argue that it was the mysterious loss of cash that precipitated his bankruptcy. In closing arguments, Debtor's Counsel argued that the seven million dollars was disclosed via counterclaims raised in the State Court Case. However, this was not clearly established by the evidence nor corroborated by Debtor's own testimony. The only certainty is that there is more to the story of the "missing millions" than what was revealed to the Court.

Because Debtor has not accurately disclosed all of his assets and interests, it is difficult to determine with accuracy if he has sufficient resources to pay his sizeable debts. Debtor's large debts do not appear modest in relation to his scheduled income. However, the Court cannot confidently ascertain Debtor's true income or the extent of his assets due to his lack disclosures and candor. Debtor testified that he was "broke"; yet, his Schedules reveal a net monthly income of $3,301.06. (DR Ex. 23). This reported income did not include undisclosed and unnegotiated checks from C-Squared Performance Automotive, LLC. In his post-trial brief, Debtor admits receipt of such checks but merely states "if there are funds to be distributed from C-Squared, the Trustee will receive such funds." (Doc. 77). There was not adequate explanation as to why checks received by Debtor from C-Squared were unnegotiated. The unnegotiated checks as well as the unreported and undisclosed loss of a substantial amount of cash raise suspicions as to what other

resources Debtor may have. Such inaccuracies and omissions make it difficult to measure his resources, and Debtor's hesitancy to accurately disclose all of his assets and income is concerning.

Moreover, there were transfers, disclosed and undisclosed, pre-petition. There were several closings of businesses owned by Debtor that were immediately reopened by Adams, Schmitt, and/or others. Debtor was and is involved on some level in many of these businesses; yet the specifics of his ongoing involvement were not readily ascertainable from his disclosures or his circumspect testimony. Of the allegations regarding transfers both pre- and post-petition, most concerning was Debtor's testimony, as confirmed by Adams and Schmitt, that certain assets were being held with the promise that they'd be returned to him after the bankruptcy or after settlement of the State Court Case. Essentially, the testimony of Debtor, Adams, and Schmitt confirmed that others were holding property for Debtor while he utilized the Bankruptcy Court to stall the State Court Case and leverage a settlement with the Kitchens Creditors. Debtor confirmed a conversation with Schmitt stating that assets needed to go in trusts, but he could put "everything back in [his] name" after the State Court restraining order was resolved. The Court will not condone such shenanigans. In Debtor's attempt to evade the Kitchens Creditors, he was simultaneously impeding the function of the Chapter 7 Trustee and this Court.

Another explanation that only left the Court with more questions was Debtor's testimony that the camper and horse trailer were not scheduled because he did not own them; however, he supposedly has authority to sell them and retain the profits.[3] The ability to sell those items coupled with testimony from other witness that they provide him cash upon request (whether payment for "advising" work or just because he asks for it) indicate that while Debtor may not currently appear

---

[3] Debtor first testified he disclosed everything except the horse trailer, but later during the same hearing defended not disclosing it early by saying he didn't own it.

11

Case 21-31333 Doc 80 Filed 12/17/21 Entered 12/17/21 16:38:50 Desc Main
Document Page 11 of 17

to have sufficient resources to pay his debts, he clearly has interests and resources beyond those disclosed during the months this bankruptcy case has been pending.

Accurate disclosures are a foundational expectation of those seeking bankruptcy relief. *See* FED. R. BANKR. P. 1008 (requiring verification or unsworn declaration for "all petitions, lists, schedules, statements and amendments thereto"). The importance of accurate disclosures has been repeatedly emphasized:

> Honesty and full disclosure are absolutely required for bankruptcy jurisprudence to function and have credibility among its participants and the public. Full disclosure in any bankruptcy case begins with accurate schedules, including a description of all the debtor's assets. Schedules are signed by debtors under penalty of perjury, and counsel signs bankruptcy petitions under the implicit representations of Rule 9011(b). The gauge for measuring the accuracy of bankruptcy schedules is not calibrated with the same tepid standard applicable to averments in a civil action complaint. Rather, bankruptcy schedules are representations of hard facts about which there should be little or no equivocation, and to the extent there is uncertainty, it should be explained.

*In re Smith*, No. 12-40496-JJR, 2012 WL 3238835, at *4 (Bankr. N.D. Ala. May 24, 2012) (quoting *In re Bishop*, 2009 WL 348844, *3 (Bankr. N.D. Ala. 2009)); s*ee also In re Russell*, No. 12-80537-WRS, 2012 WL 5934648, at *9 (Bankr. M.D. Ala. Nov. 27, 2012) (dismissing with prejudice and barring discharge of all future debts due to, among other reasons, a number of errors and omissions on Schedules and Statements leading to "questionable accuracy" of filings).

While Debtor has amended schedules (after two extensions at the outset of this case), the extent of his assets, income, and business interests remains unclear. For instance, Debtor eventually disclosed he owns four scooters in Mexico ("the Mexico Business"). Yet, in his post-trial brief, he admits "while this disclosure is not accurate, it does disclose assets related to the Mexico Business and is easily corrected and sufficient to put the [C]hapter 7 [T]rustee on notice of assets related to the Mexico Business." *Id.* Full and accurate disclosure requires a debtor to do more than hint at potential assets in his schedules.

12

The case of *In re Sullivan*, relied on by Debtor, focuses on "innocent omissions" by that debtor. *See In re Sullivan*, 2011 WL 6148709 (Bankr. S.D. Ala. Dec. 12, 2011). However, the "degree of inaccuracies" here was greater than those discussed in *In re Sullivan*, and the Court believes Debtor's lack of disclosure was more than an innocent omission. Even if initially innocent, Debtor still has not correctly disclosed the Mexico Business or corrected other inaccuracies despite the multiple dismissal motions or the passing of nearly three months since filing his petition. During his testimony, Debtor still could not affirm that he had disclosed everything and was equivocal in response to most questions. Instead, Debtor argued that the Mexico Business was more of an investment and not necessarily a business. Yet, that testimony seemed to be further contradicted by confirmation that he requested information pertaining to daily balances of the business and discussed a potential sale of the business. Like the camper and horse trailer which Debtor says he doesn't own but can sell, Debtor attempted to coordinate a potential sale of the Mexico Business post-petition with the help of Adams and Schmitt. Debtor argues now in his post-trial brief that he is putting himself at the mercy of a Chapter 7 Trustee, but his testimony and his actions suggest that he would be anything but cooperative with a Chapter 7 Trustee. Instead, the Court finds that Debtor's behavior is indicative of bad faith because his omissions and inaccuracies reveal an intent to mislead the Court, Trustee, and creditors. *See In re McNichols*, 254 B.R. 422, 434 (Bankr. N.D. Ill. 2000).

Also concerning is Debtor's failure to complete pre-petition credit counseling and his failure to disclose that deficiency on either his initial or amended petitions. The Court finds Debtor's filing of a skeletal petition without first seeking pre-petition credit counseling highly suspect given that he was represented by counsel. Specifically, the box about completing credit

13

counseling pre-petition was blank on the initial petition. This section includes an express warning stating:

> The law requires that you receive a briefing about credit counseling before you file for bankruptcy. You must truthfully check one of the following choices. If you cannot do so, you are not eligible to file.
>
> If you file anyway, the court can dismiss your case, you will lose whatever filing fee you paid, and your creditors can begin collection activities again.

(Doc. 1).

Despite this warning, Debtor did not check any available box, nor did he complete the requisite pre-petition counseling until several weeks post-petition. *See In re Jones*, 289 B.R. 436, 438, fn 2 (Bankr. M.D. Ala. 2003) (discussing Debtor's omission of prior filings when filing petition as an indicator of bad faith and stating "[t]he Debtor is required to sign a declaration that the information contained in the petition is true and correct. In this case, the Debtor knowingly filed a petition containing false information."); s*ee In re Dent*, 275 B.R. 625, 631 (Bankr. M.D. Ala. 2002) (imposing an injunction on debtor's refiling when schedules and statements were false and/or misleading). While not disclosing prior filings is a different concern, not reporting the completion or non-completion of pre-petition credit counseling is also a significant omission. Also disturbing is that later, when filing amendments, Debtor falsely checked the box that he'd received the counseling "within 180 days **before** I filed this bankruptcy petition" even though it had not been completed pre-petition. (Doc. 17) (emphasis added).

This type of error is not commonly seen in cases, like here, where Debtor is represented by capable and experienced counsel. Instead, it is typically a *pro se* debtor unfamiliar with the Bankruptcy Code and Rules. Yet, the Court cannot believe that the initial omission of any checked box or his amendment misrepresenting that he received pre-petition counseling were innocent mistakes or omissions since Debtor admitted telling Schmitt that he could have the bankruptcy

14

filing noted as a clerical error. Debtor's misleading maneuvers, or procedural gymnastics, are not only suspicious, but egregious. Debtor isn't seeking a fresh start but a reprieve from the State Court Case while he enjoys the protections of this Court, yet, simultaneously disregards its requirements. The procedural gymnastics employed by Debtor run afoul of the expectations of this Court and of bankruptcy policy in general.

Debtor's use of the bankruptcy process as a tactic to stall his largest creditors and an attempt to leverage a settlement of the State Court Case, combined with the inaccuracies, omissions, and dilatory responses to requests for more information, evidence Debtor's bad faith. Debtor's intent was not to seek a fresh start, but to shield himself and his assets from the Kitchen Creditors and the State Court, while not performing even the most basic of bankruptcy requirements. The tactics employed leading up to and during this proceeding reveal that Debtor is "not an honest but unfortunate debtor entitled to the equitable relief of a Chapter 7 liquidation." *In re Boca Vill. Ass'n, Inc.*, 422 B.R. 318, 323 (Bankr. S.D. Fla. 2009); *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994) (affirming dismissal of a debtor who manipulated his earnings to ensure that his Chapter 7 case would frustrate a divorce decree and push his ex-wife into bankruptcy). Debtor's blatant forum shopping, leveraging his bankruptcy case in attempt to obtain a settlement of the State Court Case, and lack of disclosures are clear indications of his intent to unfairly use the Chapter 7 process. By utilizing this Court to stall and evade, Debtor has "taken advantage of the court's jurisdiction in a manner abhorrent to the purposes of Chapter 7." *In re Boca Vill. Ass'n, Inc.*, 422 B.R. at 324 (citing *In re Kane & Kane*, 406 B.R. at 168).

A decision to impose a dismissal with prejudice or an injunction is within the Court's discretion and is a harsh consequence not to be taken lightly, but here the evidence and testimony clearly establish egregious misconduct and deceptive behavior warranting such consequences. *See*

15

*In re Uche*, 555 B.R. 57, 60 (Bankr. M.D. Fla. 2016) ("[T]he court should step cautiously when asked to exercise the power to deny a debtor access to its jurisdiction."). While it is not necessary to establish every factor for a finding of bad faith, it is telling that Debtor "checks the box" for the majority of the *Baird* factors.[4] The presence of almost all of these factors weigh heavily in support of a finding of cause for dismissal. *See In re Geddes*, 2012 WL 6091407, at *8 ("Generally speaking, one factor is not sufficient to dismiss a debtor's bankruptcy petition, but a combination of factors may be sufficient.").

Debtor's testimony did not portray him as an honest but unfortunate debtor seeking a fresh start but as one "gaming the system" while planning to have assets transferred back to him upon dismissal. Instead, his testimony established that he was seeking a temporary safe haven from State Court rather than genuinely seeking a discharge. The kind of bad faith displayed here is equivalent to "extreme misconduct." *In re Boca Vill. Ass'n, Inc.*, 422 B.R. at 323 ("[Section]707(a) should be limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or *using bankruptcy as a refuge from another court's jurisdiction*.") (emphasis added). Moreover, Debtor's testimony, inaccurate schedules, various omissions, and lack of disclosures reveal an overall lack of honesty. Debtor has "abused the provisions, purpose, or spirit of bankruptcy law." *Janvey v. Romero*, 883 F.3d at 412 (citing *In re Tamecki*, 229 F.3d at 207).

In viewing the totality-of-the-circumstances, there is sufficient cause in this case to support the imposition of a two-year injunction. However, the Kitchens Creditors' request for a § 349 (a) bar to discharge of all currently existing debts is denied. While Debtor has undeniably displayed bad faith worthy of sanctions, the Court will draw the line at an injunction on refiling here. The

---

[4] The *Baird* factors not expressly discussed herein were considered but were significantly outweighed by those factors that were addressed.

Kitchens Creditors are not prohibited from disputing dischargeability in a future bankruptcy proceeding should Debtor file again in the future, but the Court will not preemptively determine Debtor's current debts non-dischargeable at this time.

## IV. CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Bankruptcy Administrator's Motion and the Joinder Motion by the Kitchens Creditors are GRANTED. The instant case is DISMISSED and Debtor is enjoined from filing a bankruptcy petition under any chapter anywhere in the United States for a period of two years.

Done this 17th day of December, 2021.

*/s/ Bess M. Parrish Creswell*
Bess M. Parrish Creswell
United States Bankruptcy Judge

c: Debtor
Bill D. Bensinger, Attorney for Debtor
Wm. Wesley Causby, Attorney for Creditors
Garrick L. Stotser, Attorney for Creditors
Trustee
Bankruptcy Administrator